## WATT v. STARKE.

1. The verdict upon an issue which a court of chancery directs to be tried at law is merely advisory.  A motion for a new trial can be made only to that court, and the party submitting it must procure, for the use of the Chancellor, notes of the proceedings at the trial, and of the evidence there given.
2. The evidence and proceedings become then a part of the record, and are subject to review by the appellate court should an appeal from the decree be taken.
3. These rules are not affected by the second section of the act of Feb. 16, 1875 (18 Stat., part 3, p. 315), which provides that in a patent case the Circuit Court, when sitting in equity, may impanel a jury and submit to them such questions of fact as it may deem expedient.
4. *Harmon* v. *Johnson* (94 U. S. 371) reaffirmed.

APPEAL from the Circuit Court of the United States for the Eastern District of Virginia.

The facts are stated in the opinion of the court.

*Mr. John A. Meredith* for the appellant.
*Mr. Robert Ould* for the appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case arises on a bill in equity filed in the court below, setting forth three certain letters-patent granted to the complainant (the appellant here) for improvements in the construction of plows. The principal controversy in the case arose upon the ninth claim of the third patent set out in the bill, which was dated Nov. 26, 1867, and reissued on the seventeenth day of August, 1869. The defendant filed an answer, in which, among other things, he denied that he had infringed the claim in question, and set up certain patents granted to himself in 1860 and 1868, under which he alleged his manufacture of plows had been carried on. Afterwards, by leave of the court, he filed an amended and supplemental answer, in which, among other things, he alleged that the complainant was not the original and first inventor of the improvements specified in the claim relied on ; that it was for a particular kind of mould-board, which he alleged had been in public use and on sale in the United States for more than two years before Watt's application for his patent, specifying the names and residence of persons who had so made and used the same ; and that others had known and used it before Watt's pretended invention thereof, naming various persons, and stating their residences. The defendant also, in due time, served a notice upon the complainant that he would introduce several witnesses, whose names and residences were stated, for the purpose of proving prior knowledge and use of the improvements named in the patents more than two years before the complainant's application therefor, and of proving that he was not the original and first inventor or discoverer of said improvements. The defendant also filed in the clerk's office of the Circuit Court, long anterior to the trial, several notices naming other persons whom he intended to examine as witnesses, and specifying certain letters-patent which he intended to introduce in

evidence to show that the complainant was not the original and first inventor of the improvement claimed by him, but that the same had been patented or described in a printed publication prior to his supposed invention or discovery thereof.

After the taking of some depositions on the part of the complainant, the court, on the 7th of April, 1876, made an order for the trial of the following issues before a jury at the bar of the court (other issues being also framed, but subsequently abandoned by the complainant): —

*First*, Whether the complainant, Watt, was the original and first inventor or discoverer of the improvement claimed in said specification nine, or of any material and substantial part thereof.

*Secondly*, Whether the improvement therein claimed had been in public use or on sale in the United States for more than two years before the said Watt's application for his patent.

*Thirdly*, Whether said improvement had been patented, or described in some printed publication prior to said Watt's supposed invention or discovery thereof.

The trial of these issues came on in October, 1876, and the jury rendered a verdict in favor of the defendant on each issue. The complainant thereupon moved for a new trial, but the motion was overruled. Thereupon the court, upon the pleadings, proofs, and verdict of the jury, rendered a decree dismissing the bill. From this decree the complainant has appealed; and in support of his appeal produces two bills of exceptions taken by him at the trial before the jury : —

*First*, To the admission in evidence, on the part of the defendant, of certain patents, without any notice having been served on the complainant or his attorney of an intention to produce the same ; such notice only having been filed with the clerk.

*Secondly*, To certain instructions given to the jury by the court at the request of the defendant.

Although it appears by these bills that the defendant introduced proof tending to show that plows and mould-boards, substantially the same in principle and mode of operation with the mould-board of the plaintiff, had been in common use more than two years before the date of the application of the plaintiff for his original patent, and that the complainant introduced rebutting testimony on the subject, none of this

evidence is contained in the record. The only evidence which the record discloses is the depositions taken by the complainant before the trial of the issues.

We lately held, in the case of *Johnson* v. *Harmon* (94 U. S. 371), that a bill of exceptions cannot be taken on the trial of a feigned issue directed by a court of equity, or, if taken, can only be used on a motion for a new trial. We are still of that opinion, for the reasons then stated. The court below may have been abundantly satisfied from the evidence taken at the trial that the complainant had no case. The complainant, on his motion for a new trial, might have had the evidence, or the substance of it, stated and made part of the record, and then we could have seen whether the court below had before it sufficient grounds for being satisfied with the conclusions of the jury. This is the proper course in such cases. See 2 Smith, Ch. Pract. c. 9, and especially pp. 84–88. The fact that by virtue of the recent statute, passed Feb. 16, 1875 (18 Stat., part 3, 315, sect. 2), the trial of a feigned issue may be had, in patent cases, at the bar of the court, makes no difference ; for it is expressly declared that the verdict of the jury in such cases " shall be treated and proceeded upon in the same manner and with the same effect as in the case of issues sent from chancery to a court of law and returned with such findings." Where a court of chancery suspends proceedings in a cause in order to allow the parties to bring an action at law to try the legal right, it does not assume to interfere with the course of proceedings in the court of law, and a motion for new trial must be made to that court ; but when it directs an issue to be tried at law, a motion for a new trial must be made to the Court of Chancery ; and for that purpose the party applying for a new trial must procure notes of the proceedings and of the evidence given at the trial for the use of the Chancellor. This is done either by having the proceedings and evidence reported with the verdict, or by moving the Chancellor to send to the judge who tried the issue, for his notes of trial; or procuring a statement of the same in some other proper way. The Chancellor then has before him the evidence given to the jury, and the proceedings at the trial, and may be satisfied, by an examination thereof, that the verdict ought

not to be disturbed. The evidence and proceedings then become a part of the record, and go up to the court of appeal if an appeal is taken. See Graham, New Trials, by Waterman, vol. iii. p. 1551. In *Bootle* v. *Blundell*, 19 Ves. 500, Lord Eldon said : " If this court thinks proper to consider the case upon the record as fit to be governed by the result of a trial, the review or propriety of which belongs to a court of law, the opinion of the court of law is sought in such a form, that it is regarded as conclusive, whether the judgment is obtained upon a verdict, or in any other shape ; but upon an issue directed, this court reserves to itself the review of all that passes at law ; and one principle, on which the motion for a new trial is made here and not to the court of law, is, that this court regards *the judge's report* with a view to determine whether the information collected before the jury, together with that which appears upon the record of this court, is sufficient to enable it to proceed satisfactorily, to which it did not consider itself competent previously." And in another case before the same judge, *Barker* v. *Ray* (2 Russ. 75), he said : " In considering whether, in such a case as this, the verdict ought to be disturbed by a new trial, allow me to say that this court, in granting or refusing new trials, proceeds upon very different principles from those of a court of law. Issues are directed to satisfy the judge, which judge is supposed, after he is in possession of all that passed upon the trial, to know all that passed there ; and looking at the depositions in the cause, and the proceedings both here and at law, he is to see whether, on the whole, they do or do not satisfy him. It has been ruled over and over again, that if, on the trial of an issue, a judge reject evidence which ought to have been received, or receive evidence which ought to have been refused, though in that case a court of law would grant a new trial, yet if this court is satisfied, that if the evidence improperly received had been rejected, or the evidence improperly rejected had been received, the verdict ought not to have been different, it will not grant a new trial merely upon such grounds."

It is difficult to see how the matter could be made more clear than it is here put by Lord Eldon, whose familiarity with equity practice and pleadings has probably never been sur-

passed. The remarks above quoted have a direct application to this case. The evidence before the jury, on the question of prior use, may have been so overwhelming as to satisfy the court below that no new trial ought to be granted, but that the verdict should stand, whatever might be said as to the technical points raised by the bills of exceptions. That evidence is not before us. It was before the court below, because the trial was had at the bar of that court. It might have been here so as to be considered by us also, had the party who was dissatisfied with the verdict (in this case, the complainant) seen fit to have procured a statement of the evidence from the judge's notes, or in some other proper way. This was for him to do, if he desired to question the verdict or the decree rendered by the court.

The reason of the practice is obvious: the verdict of a jury upon an issue out of chancery is only advisory, and never conclusive upon the court. It is intended to inform the conscience of the Chancellor. It may be disregarded, and a decree rendered contrary to it. See, in addition to the cases cited, *Basey* v. *Gallagher*, 20 Wall. 670. If the verdict were conclusive, erroneous rulings at the time, if material, would vitiate it, of course, and render a new trial necessary. But not being conclusive, the Chancellor may be satisfied with the verdict notwithstanding such rulings; or he may think a new trial desirable even if no erroneous rulings be made. But in all cases where the verdict is brought in question, it is necessary that he be made acquainted with what passed at the trial, including as well the evidence given as the rulings of the court, in order that he may exercise his own judgment in the matter. Exceptions to rulings are proper to be taken and noted; for upon a view of the whole case, the mind of the Chancellor may be affected by them; just as it is proper to take and note objections to evidence taken by deposition: but a bill of exceptions, as such, has no proper place in the proceeding. The verdict can only be set aside on a motion for a new trial, based, not on mere errors of the judge, but upon review of the whole case as submitted to the jury.

What took place on the motion for new trial in this case we are not informed by the record. But as the trial was had at

the bar of the court, even though no statement of the proceeding was made up, the court had the benefit of its own notes of the trial, and therefore was cognizant of all that occurred. Had we the same means of knowledge before us, we could then judge whether the court decided properly or not. But we have not these means. We have only bills of exceptions, which are taken, not for use before the court that tries the cause, but for the use of a court of error or appeal; and are generally taken, as they were here, upon the specific rulings of the court of trial, and not upon the entire proceeding. To decide the case upon these bills, therefore, would be to decide it upon a different case from that upon which it was decided by the court below.

*Brockett* v. *Brockett.* (3 How. 691) was an appeal from a decree of the Circuit Court of the District of Columbia. There had been an issue directed, which was tried on the law side of that court. Exceptions were taken at that trial; and it was sought to procure a reversal of the decree upon these exceptions. But this court decided that this could not be done. The court, speaking by Justice McLean, say: " The bills of exceptions are copied into the record, but they do not properly constitute a part of it, as they were not brought to the notice and decision of the court in chancery." This case is directly to the point, that a bill of exceptions is not the proper mode of reviewing the trial of an issue out of chancery.

Had the case been fully presented to us, as the court below had it before it on the motion for a new trial, we do not mean to say that the objections relied on by the appellant might not have been good ground of reversal of the decree. But without that, we cannot say that they are; for, even though they had been well taken, they would not necessarily have been good ground for a new trial. The usual grounds for directing a new trial of an issue, as stated in Smith's Chancery Practice (Phila. ed.), vol. ii. p. 84 (citing *Tatham* v. *Wright*, 2 Russ. & M. 1), are, " 1st, the alleged improper summing up of the judge; 2dly, because the weight of evidence is against the verdict; and, 3dly, because of an informality in the evidence." But, as we have before shown, notwithstanding erroneous rulings may have been made, the whole case as presented at the trial may have been such as to show to the Chancellor's satisfaction that no

new trial was necessary. In the case cited by Smith (*Tatham* v. *Wright*), the Master of the Rolls, on the motion for new trial, said: " I have carefully read every word of the report of the learned judge, but have purposely abstained from reading the short-hand writer's notes of the summing up, in order that my judgment might be formed upon the evidence alone. . . . I am clearly of opinion that the weight of evidence is in favor of the competence of the testator, and that the jury have come to a sound conclusion on the subject. As this opinion is formed without any reference to the summing up of the learned judge, and as I should have considered it my duty to direct a new trial upon the evidence alone, whatever the summing up had been, if the jury had come to a different conclusion, it is not necessary to take any notice of the observations which have been made in that respect." On appeal to the Lord Chancellor, Chief Justice Tindall and Chief Baron Lyndhurst, sitting for the Chancellor (who had been counsel in the cause), took no notice of the instructions given by the judge to the jury; but carefully examined the evidence which had been laid before the jury at the trial, and sustained the verdict, as the Master of the Rolls had done.

We have examined the authorities referred to by the learned counsel of the appellant, but find nothing therein which militates against the views which we have expressed.

The case of *Salter* v. *Hite* (7 Bro. P. C. 189), which is most relied on, only confirms these views. There, notes of the evidence were had, on a motion for a new trial, and the decision, both of the Lord Chancellor and the House of Lords, was based upon a consideration of the whole matter. *Cleeve* v. *Gascoine* (Amb. 323) came before the Chancellor on a motion for a new trial, no bill of exceptions having been taken. A new trial was granted on two grounds: first, because postponement had been refused by the judge, notwithstanding the absence of a material witness for the defendant by means of sudden illness. The materiality of the witness's testimony was shown by a statement of what it had been on a previous trial, in which a contrary verdict had been given. The other ground was a clear misdirection of the judge to the jury. Under these circumstances, the Lord Chancellor deemed the verdict unsat-

isfactory, and directed a new trial to be had. Misdirection of the judge is, undoubtedly, a strong circumstance to be taken into consideration, when the Chancellor has the whole case before him, and the evidence is not so preponderating as to sustain the verdict notwithstanding the instructions. Here the Chancellor had before him sufficient to show that the verdict was taken, not only under a misdirection, but in the absence of very important evidence which ought to have been before the jury. We see nothing here in conflict with what we have said above. The exclusion of material testimony which might have changed the verdict is quite as important to a just conclusion to be formed by the Chancellor, as the preponderance of testimony actually given can be to sustain a verdict open to technical objections. In both cases the question is, whether, in view of all the evidence given, as well as of what has been improperly excluded, the conscience of the Chancellor ought to be satisfied.

In the case of *Watkins* v. *Carlton* (10 Leigh (Va.), 560), the Court of Appeals of Virginia held, as we do, that the whole proceedings in the court of law, upon an issue directed out of chancery for the purpose of ascertaining a particular fact, are part and parcel of the chancery cause; and that the court, if required, must certify any instructions given to the jury; inasmuch as the Chancellor has a right to see the whole proceedings. In that case a bill of exceptions was taken, it is true; but the case was considered as upon a motion for a new trial. One of the issues, whether or not the defendant was a mulatto, had, under the instructions of the judge, been ignored or evaded, and evidence upon it had been excluded. All this was made to appear to the Court of Appeals; and that court very properly reversed the decree. As intimated by us in *Johnson* v. *Harmon*, though a bill of exceptions cannot properly be taken on the trial of a feigned issue out of chancery, yet, if taken, it may be employed as one of the means of bringing before the court, on a motion for a new trial, the proceedings which took place at the trial. This is all that was done in *Watkins* v. *Carlton*.

*Brockenbrough* v. *Spindle* (17 Gratt. (Va.) 22) was a bill filed to set aside a deed of trust on account of usury in the loan intended to be secured thereby, and the proceedings were regu-

lated by statute, which required that the question of usury should be tried by jury at the bar of the court. Apparently, the verdict of the jury was to be conclusive. In this case a bill of exceptions was taken in which all the evidence given on the trial was set forth; and the Court of Appeals went into a full consideration both of the evidence and of the rulings of the court, and reversed the decree and ordered a new trial, with instructions that if the evidence on the new trial should be substantially the same as on the former trial, the court should instruct the jury, if they believed the evidence, that they ought to find the transaction not to be usurious. In view of the effect given to the verdict by statute in this case, we see nothing in the action of the Court of Appeals in conflict with what has been laid down in this opinion; and we find nothing material to the question in the other cases that have been cited.

*Decree affirmed.*