BROWN et al. v. CRANBERRY IRON & COAL CO.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 87.

WRIT OF ERROR—TO WHAT JUDGMENT LIES.

B. brought a suit in equity against the C. Co. for partition of certain lands. The C. Co. answered, denying B.'s title, and the court stayed proceedings in the partition suit, and gave leave to plaintiff to bring an action at law, which he did, in the ordinary form for the recovery of land, the C. Co. setting up in defense that B. was estopped to claim the land both by deed and by acts in pais. Upon the trial, before the same judge by whom the partition suit had been stayed, the question of estoppel by deed was reserved from the jury, and, in submitting the question of estoppel in pais, the judge stated that he could, as chancellor, have heard the evidence, and decided the whole controversy himself, but preferred to get the assistance of the jury. The jury found for the defendant, and judgment was entered upon the finding, to which exception was taken, and a writ of error allowed. The judge afterwards passed upon the issue of estoppel by deed in favor of the defendant, but no judgment was entered on that issue. *Held*, that the proceedings were anomalous, but, treating them as an action at law, the judgment upon which the writ of error was allowed was not final, since a decision upon both issues, of estoppel by deed and estoppel in pais, was necessary to a final decision of the action; and, if exception were taken to a judgment upon the former issue, as decided by the judge, the judgment upon the present writ would not end the case, and that, accordingly, such writ could not be entertained. Morris, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

This was an action at law by J. Evans Brown and William B. Carter against the Cranberry Iron & Coal Company to recover an undivided interest in certain lands, brought pursuant to leave given in a partition suit between the same parties. One issue was decided by the court without a jury. 59 Fed. 434. Upon another issue, judgment was entered, on the verdict of a jury, in favor of defendant. Plaintiffs bring error.

This case is somewhat peculiar in its character. Certain persons, Hoke, Sumner, and Hutchinson, had become the owners of a tract of land in North Carolina, known as the "Cranberry Iron Ore Bank." They offered it for sale in 1866 or 1867 to parties in New York. Before negotiations for the purchase were concluded, it was discovered that J. Evans Brown, one of the parties in this case, and A. C. Avery, as executor of Isaac T. Avery, claimed an interest in the minerals in the land. As the proposed purchasers were buying the land chiefly for the minerals in it, this claim induced them to break off negotiations. Thereupon Hoke, Sumner, and Hutchinson opened negotiations with Brown and Avery looking to the extinguishment of their claim, so that they could renew their negotiations with the persons in New York, and offer to them a perfect title. The claim set up by Brown and Avery was this: That Brown and Avery's testator had owned the minerals in this tract of land as tenants in common; that, by his deed, the testator, Avery, had released to Brown all his interest in the minerals in that part of the tract of land lying to the east of a road or path running through the land in a general direction north and south, so that Brown owned an undivided half of all the minerals in the land on the west of that road or path, Avery owning the other undivided half, and Brown was sole owner of all the minerals to the east of that road or path. This deed was not on record at the time of the negotiation. There was on record a deed between Brown and Avery, the recital of which

contained this information. The negotiations between Hoke and his associates and Brown and Avery, executor, ended in the conveyance by Avery, as executor, of an undivided half interest in the minerals in this land, and some weeks afterwards in the conveyance by Brown, through his attorneys in fact, of "the following tract of land, situate and being in the county of Mitchell, in the state of North Carolina; that is, the one-half of the mineral interest in said lands." Then follows a full description of the lands by metes and bounds. Habendum: "The one-half of the mines and mineral interests in said lands and the appurtenances thereto belonging" to Sumner and Hoke in fee. The consideration paid to Avery, executor, was $17,000; that to Brown, $22,000. These deeds having been executed, the purchasers, thinking they had a clear, unincumbered title in fee, completed the sale to the parties in New York, and, by mesne conveyance from the latter, the property has ·been conveyed to the defendant, the Cranberry Iron & Coal Company. This transaction between Brown and Avery, executor, with Hoke and his associates, was in 1867. The coal and iron company, having purchased, went to great expense in developing the mineral resources of the property, erecting buildings, constructing a railroad, and sinking shafts. But they have not actually mined, beyond a test or so, any of the land east of the road or path. They have been in actual use and cultivation of the whole surface. Some time preceding February, 1890 (the record does not state when), J. Evans Brown filed his bill in the circuit court of the United States for the Western district of North Carolina, against the Cranberry Iron & Coal Company, praying partition. He joined with him, as co-complainant, William B. Carter, to whom, some time after his deed to Hoke and his associates, he had conveyed one-half of the interest he now claims. His position is that his deed, by his attorney, conveyed only one-half of the interest in the minerals; that he had owned all the minerals in that part of the land east of the road or path, and that still the other half interest in the minerals on this east side remained in him. His prayer is for partition of this mineral interest,—one-fourth to himself, one-fourth to Carter, and one-half to the Cranberry Company. The answer of the Cranberry Company denied the title of the complainant. The record does not disclose the exact character of this defense. The judge who presided in the circuit court in equity stayed proceedings in the cause, and gave leave to plaintiff to bring and prosecute an action at law within one year, to establish his title as tenant in common to the land of which he prayed partition, the defendant in its answer having asserted sole seisin. Compare Brown v. Coal Co., 40 Fed. 849. The action was brought in the form prescribed by the Code of North Carolina for the recovery of real property. The answer of the defendant interposed, as a first defense, a general denial of the plaintiff's title, and, by way of a second defense, set up certain facts constituting, as was claimed, estoppel in pais and estoppel by deed, thus precluding the plaintiff from claiming title as against the defendant. The cause, being at issue, was tried before a jury and the same judge who had presided in the court of equity. At this trial all other issues seem to have been abandoned, and the only issue presented was that of estoppel, the onus having been cast on the defendant. This aspect thus presented by the case is explained by the learned judge in his charge to the jury. The "suit has been brought, and the only question for you to determine at issue in this court is, is the plaintiff estopped from claiming title by deed, conduct, acts, or otherwise? As chancellor in the court of equity, I could settle the case myself, and I could have heard all the evidence and all the matter myself, but I preferred to get the assistance of the jury on certain questions of fact, and I have called you in for that purpose." The court reserved its opinion upon the question, were the plaintiffs estopped by deed? and submitted to the jury the other question: "Are the plaintiffs estopped by their acts, declarations, or otherwise from claiming any interest in the mines and minerals in the land described in the complaint?" They answered this question, "Yes." Judgment was entered on this finding. Exceptions having been taken in due course, a writ of error was allowed, and the case is before us on the exceptions and assignments of error. After granting the writ, the judge passed upon the issue of law stated by him at the trial, and reserved

by him, and held that the plaintiffs were estopped by the deed. No judgment has yet been entered on this issue. The sole question before us is on the writ of error.

Charles A. Moore, for plaintiffs in error.

Richard H. Battle, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

SIMONTON, Circuit Judge (after stating the facts). It is not easy to determine what this proceeding at law was. It began an action at law, growing out of a proceeding in equity brought under the direction and with the permission of the chancellor. The complainants claimed to be cotenants in certain mines and minerals with the defendant, and sought partition. The defendant denied their title, and set up sole seisin. This "was not a mere point of law or fact incidentally in dispute, but a general question of right, determinable as such by a law court, and requiring a decision, according to the course of that court, both of disputed facts and the law applicable thereto." The proper course, therefore, was to direct an action at law to be brought to determine the title. Adams, Eq. (7th Ed.) 378. And this is the constant practice of courts of equity in suits for partition when the title is in dispute. 3 Pom. Eq. Jur. § 1386, and note 3. But, when the case came before the law court, every other question was eliminated, and the only issue was this of estoppel, in pais as well as by deed,—an issue within the domain of equity jurisprudence, and cognizable by such a court. Pom. Eq. Jur. § 802. When this issue was submitted to the jury, it was with the purpose of aiding the chancellor in coming to his conclusion, submitted in his discretion, and not as a matter of right. This he himself distinctly asserted in his charge. It is not excepted to. In this respect the proceeding assumed the form of an issue for a jury. Such an issue is directed when an incidental question of fact is so involved in doubt, by conflicting or insufficient evidence, that the court considering the inefficacy of written evidence is desirous of referring it to the verdict of a jury. Adams, Eq. (7th Ed.) 375. If this be an issue out of chancery, the finding of the jury and the judgment entered thereon are not reversible on bills of exception and writ of error here. The error, if any exist, must be removed, and corrected in the court ordering the issue. Johnson v. Harmon, 94 U. S. 372; Watt v. Starke, 101 U. S. 250; Brockett v. Brockett, 3 How. 691; 2 Daniell, Ch. Prac. (3d Am. Ed.) 1106; Wilson v. Riddle, 123 U. S. 615, 8 Sup. Ct. 255. If, however, it be an action at law, brought under the direction and by leave of the court, then the court of equity does not assume to interfere with the course of proceedings in the court of law, and all errors made at the trial must be corrected in that court or by writ of error to the appellate court. Watt v. Stark, 101 U. S., at page 250; Bootle v. Blundell, 19 Ves. 500; Adams, Eq. (7th Ed.) p. 378; Smith, Ch. Prac. 90. Treating this record as an action at law, reviewed on writ of error, the result of which must be conclusive of the issues presented, the first inquiry

is, is it ripe for a hearing in this court? As an action at law, it must be governed by the course of proceeding in a court of law. This case, as presented in the court below, involved two issues,—one determinable by the court alone; the other submitted to the jury. One issue was: "Did the deed of Brown estop him and his privy from denying the title of defendant?" The other issue was: "Are the plaintiffs estopped by their acts, declarations, or otherwise from claiming any interest in the mines and minerals in the land described in the complaint?" Each issue was independent of the other. The decision of both was absolutely necessary to a final decision of the action. The jury found the issue of fact in favor of defendant. That issue is here. The judge has ruled upon the other issue also in favor of defendant. That ruling is not here. If it be not excepted to, it ends the action. If exception be taken hereafter, then our conclusions upon this writ of error will not end the case. In other words, it is not here on a final judgment; and cannot in this record be disposed of. Let the case be remanded to the circuit court for such proceedings as may be necessary, each party to pay the costs by them or it incurred in this court.

MORRIS, District Judge (dissenting). I do not concur in the opinion or judgment of the majority of the court. The disposition we are required to make of this case depends, in the first place, upon whether the case tried below, in which the writ of error was allowed, was an issue out of chancery, or an independent action at law to try title. If it was the former, it is not properly before us, and cannot be until there is a final decree in the chancery case; if the latter, then it is before us on writ of error to the rulings of the court below, and I think we should consider the exceptions and assignments of error. So far as the pleadings in the record disclose, there is nothing to connect this case with any suit in equity. It begins, like any common-law action, with a summons commanding the Cranberry Iron & Coal Company to appear and answer the complaint of J. Evans Brown and William B. Carter. The complaint filed alleges that the plaintiffs are each seised in fee simple of an undivided fourth interest in the mines, minerals, and mineral interests in certain described lands, and that the defendant is wrongfully and unlawfully in possession, and withholds the same from the plaintiffs; and the plaintiffs demand judgment that they be let into possession of the said undivided one-half interest, and for damages and costs. The defendant answered, alleging that it was sole owner of the land described, and of all the mineral interests therein, and it also filed a special plea, in which it alleged that its grantors had obtained from the plaintiff Brown, in 1867, a deed intended to grant all his (the said Brown's) mineral interest in the land in suit under the circumstances set out in the plea, which estopped the plaintiffs from making any claim whatever to said property. A jury was impaneled to try the issue made by the pleadings between the parties, and, after hearing the evidence and receiving the instructions of the court, the following question was submitted to the jury

for their verdict: "Are the plaintiffs estopped by their acts, declarations, or otherwise from claiming any interest in the mines and minerals in the land described in the complaint?" The jury, for their verdict, answered, "Yes." Thereupon judgment was entered that the plaintiffs were not the owners of an undivided one-half interest in the mines and minerals in the lands described in the complaint, and that they take nothing by their writ, and that the defendant have judgment for its costs. It was further "adjudged" that said finding, together with all the evidence and the charge of his honor, be forthwith reported to the court of equity. This is the first reference anywhere in the record to any equity suit, except that some allusion is made to it in the judge's charge. Bills of exceptions were signed by the judge, and a writ of error was allowed as in actions at law. There is nothing in the record to show that the case tried by the jury was an issue out of chancery sent to a court of law to be tried in order to inform the conscience of the chancellor; on the contrary, except from some allusions by the judge in his charge and the order that the findings, evidence, and charge be reported "to the court of equity," we should not know there had been any equity case connected with this litigation. From the briefs of counsel, we gather that a suit for partition had been instituted in equity by Brown and Carter against the Cranberry Iron & Coal Company, and that the defendant corporation in that suit, by its answer, denied that Brown and Carter had any interest in the land; and thereupon, as the briefs state, the court required the complainants to bring an action against the respondent at law to try title. If we are to take these statements from the briefs of counsel on both sides as informing us that there were partition proceedings in an equity court prior to the instituting of the present suit, it would seem that the equity court proceeded properly. If a suit is instituted for partition by a complainant whose right to partition is denied because he is alleged to have no title or interest in the premises as to which partition is prayed, it is the duty of the equity court either to dismiss the bill, or to retain it for a reasonable time to afford the complainant an opportunity of establishing his title at law. The rule is that a party whose title is disputed or is suspicious must establish his title at law before he comes into chancery asking a partition. If he files his bill for partition, the equity court may, in its discretion, retain the bill until he has done that which he ought to have done before he filed it; and it must always be borne in mind that an equity court is not the proper tribunal to try title to land when the legal title is involved, and when no question to be determined is of peculiar equity cognizance. Hipp v. Babin, 19 How. 271; Lewis v. Cocks, 23 Wall. 466. Where the legal title is involved, the equity court does not send issues to be tried by a jury in order to ascertain the truth of disputed facts for its enlightenment, but lets the party who is out of possession bring his action of ejectment, and suspends its own proceedings until the legal title is made clear by the judgment of a court of law. 3 Pom. Eq. Jur. § 1385; 1 Story, Eq. Jur. § 653; 2 White & T. Lead. Cas. Eq. 900; 2 Daniell, Ch. Prac.

1151, note 5; Cox v. Smith, 4 Johns. Ch. 271; Currin v. Spraul, 10 Grat. 145; Boone v. Boone, 3 Md. Ch. 497; Obert v. Obert, 10 N. J. Eq. 98; Read v. Huff, 40 N. J. Eq. 233.

As stated in Watt v. Starke, 101 U. S. 250:

"Where a court of chancery suspends proceedings in a cause in order to allow parties to bring an action at law to try the legal title, it does not assume to interfere with the course of proceedings in the court of law, and a motion for a new trial must be made to that court; but, when it directs an issue to be tried at law, a motion must be made to the court of chancery."

So it is the practice, when issues are sent to a court of law, to enter no judgment on the verdict, but the judge of the law court certifies to the chancellor what the verdict was. 2 Daniell, Ch. Prac. 1119. The chancellor may disregard such a verdict, but a judgment in an ejectment suit establishing title would stand upon a different footing.

In the case now before us, in my opinion we are not at liberty to consider whether there was set up by the defendant's answer in an equity suit a title based upon matters properly cognizable in equity, such as made it proper for the equity court to proceed and adjudicate with regard to it, or as to which the chancellor might properly send issues to be tried by a jury in a law court for his enlightenment as to a question of fact. We do not know from the record what the equity suit was, and have only before us in this record an action at law regularly begun and tried, the verdict of the jury, the judgment of the court entered upon the verdict, and exceptions to the rulings of the court regularly taken during the progress of the trial, and brought here by writ of error. In his charge to the jury the judge began with some introductory remarks with regard to the commencement of the litigation in the equity court. These were mere side remarks which he himself told the jury to disregard, and told them that it was their duty to find the facts according to their own view of the evidence. The remarks of the judge on this subject were not excepted to. The issue submitted to the jury and their verdict were sufficient to support the judgment for defendant, which was entered, and which was conclusive against the plaintiffs' title. If the verdict could not be supported without a construction of the deed, and the plaintiffs' case required an instruction to the jury as to the effect of the deed, then the verdict was a mistrial, and we should reverse. It seems to me we must either affirm or reverse.

By plaintiffs' twentieth instruction, the court was asked to say that the deed was no estoppel. The court refused this instruction, and gave no instruction covering it. That refusal was excepted to, and, if the jury were left to consider the deed, it was error, unless we are satisfied that the deed was an estoppel of itself. The issue put to the jury was: "Are the plaintiffs estopped by acts, declarations, or otherwise?" This issue might appear to have been broad enough to include estoppel by the deed, but the judge does not seem to have treated it so. Treating it as an issue of estoppel in pais, the construction of the deed was immaterial, and under that issue, when the jury found that the plaintiffs were estopped, the defendant was entitled to judgment. That judgment, in my opinion, is conclusive

against the plaintiffs, unless they can show, under this writ of error, that there was error in some ruling during the trial of that issue. The opinion filed by the judge, after the judgment was entered, was a mere statement of his reasons for refusing the twentieth instruction, or for not granting a new trial, or for some other purpose of his own, and is not before us except as an argument in favor of some ruling he has made during the trial, and before the judgment entered. It is not in the bill of exceptions, and it could not be excepted to. The case was a trial by jury, and only what took place before the jury can be examined. If the case was not properly put before the jury or they were misdirected, we must reverse. What can the judge now do if we send the case back? The term at which the judgment was entered is past. He could not grant a new trial, and he could not now put anything more into the bill of exceptions, and we can never look at anything but what is in the pleadings and the bill of exceptions. The defendant, to succeed, was not obliged to show that the plaintiffs were estopped both by the deed and by their acts and declarations; either one was sufficient. If, irrespective of the construction of the deed, the acts of the plaintiffs estopped them, then the defendant had a right to rely on that estoppel in pais; and, if the jury found for the defendant on that issue, it was entitled to judgment without considering the deed. The judge was of this opinion, and, when the jury found the estoppel, he entered judgment on the verdict. If they had found for the plaintiffs on the question of estoppel, he would probably, as appears from his opinion, have not discharged them, but would have instructed them that the deed was itself an estoppel, and directed a verdict for defendant. The judge says he had reserved that question, and it is plain he thought that the only issue submitted to the jury was the estoppel in pais, and that, when the jury found their verdict on the estoppel in pais, he considered that ended the controversy, and afterwards wrote out his views about the proper meaning of the deed, to show that he was right in refusing the plaintiffs' twentieth instruction.

I think the case is properly before us for examination of all the exceptions taken at the trial, and I am obliged to dissent from the opinion of the majority of the court, holding the judgment is not final, or that the record is incomplete, and that the exceptions and assignments of error are not before us for our examination.