SOUTHERN BUILDING & LOAN ASS'N v. CAREY et ux.

(Circuit Court, W. D. Tennessee.  July 19, 1902.)

1. APPEAL—RIGHT—DECREE ENTERED ON MANDATE.

A circuit court has no power to refuse to allow an appeal on the ground that the decree sought to be appealed from was entered on a mandate from the circuit court of appeals.

2. SAME—GROUNDS FOR DENIAL.

A circuit court cannot deny an appeal from its decree on the ground that it is frivolous and sought for delay only; that being a matter which can only be considered by the appellate court.

3. SAME—EFFECT—APPEAL FROM DECREE ENTERED ON MANDATE.

The power of a circuit court to enforce a decree entered by it on a mandate of an appellate court, notwithstanding an appeal therefrom and the tender of a proper supersedeas bond, is doubtful, and, if it exists, should be rarely exercised.

4. BILL OF EXCEPTIONS ON APPEAL—BRINGING REJECTED DOCUMENTS INTO RECORD—FEDERAL PRACTICE IN EQUITY CASES.

The practice of bringing into the record, by bill of exceptions, pleadings or papers which the court has refused to allow a party to file, is

not known to the federal courts in equity cases; but, inasmuch as a consideration of such documents may be necessary to enable the appellate court to determine whether or not they were properly rejected, it would seem that, in the absence of any statute or rule regulating the practice in that regard, the trial court may properly, by an order, direct the clerk to certify the pleading or other document rejected to the appellate court for that purpose.

In Equity. On motion for allowance of appeal.

Thomas M. Scruggs, for plaintiff.

Thomas W. Brown, for defendants.

HAMMOND, J. This is an application for an appeal from an order entered upon the mandate of the circuit court of appeals in the case of Association v. Carey, 114 Fed. 288. Before that appeal was taken there had been an accounting by the receiver before the master, leaving a balance of about $400 in his hands, which was ordered to be paid to the defendant Mrs. Carey, which was the judgment affirmed. When the mandate was filed in this court the plaintiff company asked leave to file a petition praying that this sum of $400 should not be paid to Mrs. Carey until certain delinquent taxes due upon the property foreclosed should be paid. It is stated in the petition that in accounting with the master the receiver had omitted to pay these delinquent taxes, and that they had since been paid by the plaintiff company, after its purchase of the property under the foreclosure decree. The petition also asked that certain costs claimed to have been reserved by the original decree should now be decreed against Mrs. Carey, and paid out of the fund in the hands of the receiver. The court refused to entertain this petition or to allow it to be filed, and directed a decree upon the mandate paying the fund to Mrs. Carey, and decreeing costs against the plaintiff company. From this an appeal is prayed, and the application is resisted upon the ground that it is a frivolous appeal for delay, and does not lie, because the decree from which the appeal is sought is in strict conformity to the mandate of the circuit court of appeals, and is only in execution thereof. This may be true, and yet the application cannot be denied. Rule 33 of the rules of the supreme court (3 Sup. Ct. xvii) and rule 30 of the circuit courts of appeals (31 C. C. A. clxviii, 90 Fed. clxviii) furnish the only remedy known to the law against frivolous appeals for delay, by imposing damages not exceeding 10 per cent. for the delay at the discretion of the appellate court. It is said by the supreme court in the case of The Douro, 3 Wall. 564, 18 L. Ed. 168, that:

"An appeal is a matter of right, and, if prayed, must be allowed, but should never be prayed without some expectation of reversal. We impose penalties when writs of error are sued out merely for delay in cases of judgments at law for damages; and, if the rule were applicable to the case before us, we should apply it."

See, also, Prentice v. Pickersgill, 6 Wall. 511, 18 L. Ed. 790.

The rules above mentioned at first were applicable only to writs of error at law, but they were subsequently extended to cases of appeal in equity and in admiralty, covering the very situation mentioned by the court in the above quotation. These rules apply as well to cases of a second appeal from an order upon the mandate as to original

appeals. In any case the court, justice, or judge granting the appeal is but little more than a ministerial officer carrying into effect the statutes in that behalf. Whether the appeal is one that ought or ought not to be taken, that may or may not be entertained on its merits, or should be redressed by damages for the delay occasioned in taking it, is a question solely for determination by the appellate court. The court or judge passing upon an application for an appeal can only refuse it in those cases where no appeal at all is allowed, and where the judgment of the original court is absolutely final, which can never be said of such decrees as this.

Cases of appeal or writ of error from judgments entered upon the mandates of the appellate court are almost innumerable. Ex parte Union Steamboat Co., 178 U. S. 317, 20 Sup. Ct. 904, 44 L. Ed. 84, where the cases are numerously cited. It is there said that "the inferior court is justified in considering and deciding any question left open by the mandate and the opinion of this court, and its decision upon such matters can only be reviewed upon a new appeal to the proper court." In this case the plaintiff contends that final judgment for costs was not decreed by the court of appeals, and should not now be adjudged against it; also that the taxes delinquent and not paid at the time of its purchase under the foreclosure decree should be paid by the receiver, and that its omission to pay them before the sale should not affect that right; and that these matters were not adjudicated in the court of appeals. The court here is of the opinion that the decree of the court of appeals is effective as to all these matters, and that inasmuch as it settles that Mrs. Carey was not liable beyond her undertaking to mortgage the corpus of her estate, and that the fund in the hands of the receiver represents rents or profits which were not mortgaged by her, it is a necessary inference from the mandate that there should be no decree against her for either costs or taxes in exoneration of the plaintiff company. Therefore the petition presented was refused, and not allowed to be filed. But it now seems to the court quite certain that this application for appeal from that construction of the mandate falls within the category mentioned by Mr. Justice Brown in the quotation above made from the case of Ex parte Union Steamboat Co., supra.

If there were nothing involved but the question as to the costs, it is possible that this court might refuse this application for appeal, upon the ground that no appeal lies from a mere decree for costs. But the application further involves the question made as to the liability of Mrs. Carey to pay the delinquent taxes, which is sufficient to give the appellate court jurisdiction over both questions, as was ruled in Bank v. Hunter, 152 U. S. 512, 14 Sup. Ct. 675, 38 L. Ed. 534. This court is further of the opinion that this matter ought to have been settled prior to the former decree which was appealed and confirmed. The plaintiff ought to have diligently ascertained the taxes delinquent before any sale was had under the foreclosure decree, or at least before its purchase of the property, and have had the same paid out of the fund, if it were liable therefor; but, not having done this, it was the plaintiff's own fault that the matter was not so litigated, and the question is therefore res judicata by the decree of the appellate court.

Mackall v. Richards, 116 U. S. 45, 6 Sup. Ct. 234, 29 L. Ed. 558. It was said in that case that the appellate court will not entertain a second appeal from a decree upon its own mandate where, that decree conforms to the mandate; but obviously this is a question for that court to decide, and not this court upon the application for the appeal. The case of Stewart v. Salamon, 97 U. S. 361, 24 L. Ed. 1044, shows that the proper remedy against such appeals as that applied for here is by a motion to dismiss the appeal made in the appellate court, and upon that motion the court will examine the decree made upon the mandate, and if it be in conformity to that mandate the appeal will be dismissed, but, if not, the error will be corrected. And this and many subsequent cases show that, where a second appeal does not lie for the correction of any alleged errors in entering a decree upon the mandate, a mandamus in aid of the mandate is the proper remedy. The dissenting judge in that case thought that the remedy of dismissing the appeal was not a proper one, but that the appeal should be entertained and heard notwithstanding that it was taken only for delay, for which delay he said that the only remedy was the damages allowed under rule 33, supra. But I have searched in vain for any case authorizing or intimating that the court or judge below could refuse to grant such an appeal, even when it was apparent that it was taken only for delay. That is a question which it seems to me the court below cannot decide.

The cases are numerous, and it is unnecessary to cite them further, which establish the foregoing practice upon this subject. As I understand them, the court below has no discretion in any way to alter or amend the decree of the appellate court, and has no further duty than to enter the decree of enforcement according to the mandate. But if disputes arise as to the interpretation of the mandate, and, as to what does or does not conform thereto, a second appeal is open to the parties to settle those disputes. Or if subsequent proceedings are taken, or are offered and refused, as in this case, a second appeal is open to the parties, to review the action of the court in allowing or disallowing such subsequent proceedings. And in cases where for any reason a second appeal is not allowable, mandamus is the remedy for the correction of such alleged errors occurring after the mandate has arrived, as if the plaintiff company here should be put to a mandamus to compel us to entertain and file its petition; but always a second appeal, if that be possible, seems to be the preferable remedy. Hinckley v. Morton, 103 U. S. 765, 26 L. Ed. 607; Martin v. Hunter, 1 Wheat. 304, 4 L. Ed. 97; Cook v. Burnley, 11 Wall. 677, 20 L. Ed. 84; Ex parte Washington & G. R. Co., 140 U. S. 91, 11 Sup. Ct. 673, 35 L. Ed. 339; Gaines v. Rugg, 148 U. S. 228, 242, 13 Sup. Ct. 611, 37 L. Ed. 432.

It is intimated, if not decided, in Perkins v. Fourniquet, 14 How. 328, 330, 14 L. Ed. 435, that the court below may go on and execute the decree of the appellate court notwithstanding an appeal taken after the mandate has been entered and decreed, but it is not suggested that the court below may refuse the second appeal. Nor are we told under what circumstances the court should proceed with the execution of the mandate notwithstanding the appeal, and no subsequent case has been found where such a course was taken. It

seems to me a doubtful power, at best, since by exercising it the court below would practically preclude all review of its judgment in the matter, and would, in effect, finally decide the very question which the appeal has carried to the appellate court for its determination. It would also seem that the statutes providing under what circumstances a writ of error or appeal shall operate as a supersedeas of the decree would control this matter, and that the court below should exercise the power intimated in Perkins v. Fourniquet very rarely, if at all, and perhaps never if the decree be for the payment of money, and the proposed appellant offers a bond, conditioned as required by law, to effectuate the supersedeas provided by the statute. Rev. St. §§ 1000, 1007; Sup. Ct. Rule 29 (3 Sup. Ct. xvi); Cir. Ct. App. Rule 13 (31 C. C. A. clii, 90 Fed. clii); Kitchen v. Randolph, 93 U. S. 86, 23 L. Ed. 810; Fost. Fed. Prac. § 402.

If the power exists in the court below to grant the appeal, but to refuse the supersedeas pending the hearing of it, or if, having signed a bond, conditioned as required by law, to effectuate a supersedeas, as in ordinary cases, the court below may notwithstanding disregard the supersedeas because it is a second appeal, and from a decree believed by the court below to be in conformity to the mandate, then that power is so extraordinary that it is not surprising that no case has been found or cited by counsel where it was exercised.

On the whole, notwithstanding a strong belief that this appeal must fail and be dismissed in the court of appeals, and notwithstanding the contention of the defendants' counsel that it is obviously only for delay, I do not feel authorized to refuse it, nor to decline to accept a bond which, under the statute, will operate as a supersedeas pending the appeal. If I am wrong about this, the remedy of the defendant who is entitled to the money is an application to the court of appeals for a mandamus directing the enforcement of its decree in spite of the appeal that has been taken. Of course, the court or judge should do without mandamus that which he would be so directed to do, but, where the power to act is doubtful, judicial wisdom requires that he should await the judgment of the appellate court where the question involved concerns that jurisdiction. The appeal will be allowed.

The plaintiff tenders a bill of exceptions designed to make the petition offered by it a part of the record, but I must decline to sign it because bills of exception are unknown to the practice of the court. It is a familiar and well-established practice in the state chancery courts to make all papers or documents of any kind which have been rejected by the court, and have not been allowed to be filed, a part of the record by a bill of exceptions, after the manner of the practice at law. This is especially so in Tennessee practice. Spurlock v. Fulks, 1 Swan, 289; Perry v. Pearson, 1 Humph. 431, 439; Kelly v. Fletcher, 94 Tenn. 1, 5, 28 S. W. 1099; Aymett v. Butler, 8 Lea, 453; Wynne v. Edwards, 7 Humph. 418; Hill v. Bowers, 4 Heisk. 272; Weakley v. Pearce, 5 Heisk. 401, 415; Jones v. Stockton, 6 Lea, 133; Hays v. Crawford, 1 Heisk. 86; State v. Hawkins, 91 Tenn. 140, 18 S. W. 114; Ingram v. Smith, 1 Head, 414, 418; Anderson v. Railroad, 91 Tenn. 44, 54, 17 S. W. 803; Steele v. Frierson, 85 Tenn. 431, 438, 3 S. W. 649; 1 Webb, Dig. pp. 448, 451, 452; Id. p. 351. Convenient as this prac-

tice is, it is unknown to, and is not permitted by, the federal practice in equity cases. Ex parte Story, 12 Pet. 339, 343, 9 L. Ed. 1108; Johnson v. Harmon, 94 U. S. 372, 24 L. Ed. 271; Watt v. Starke, 101 U. S. 247, 250, 252, 255, 25 L. Ed. 826; Wilson v. Riddle, 123 U. S. 608, 615, 8 Sup. Ct. 255, 31 L. Ed. 280; Brockett v. Brockett, 3 How. 631, 11 L. Ed. 786; Continental Trust Co. v. Toledo, St. L. & K. C. R. Co. (C. C.) 99 Fed. 177; Brinkley v. Railroad Co. (C. C.) 95 Fed. 345, 351; Brown v. Coal Co., 13 C. C. A. 66, 65 Fed. 636, 638; 3 Enc. Pl. & Prac. 381; Id. 401; 2 Daniell, Ch. Prac. (1st Ed.) 746; Id. (5th Ed.) 1119, note 6.

The bill of exceptions being refused, the plaintiff asks to modify the former order denying it leave to file the rejected petition "by allowing it to be filed for the purpose of making it a part of the record." This is almost the same alternative order that was asked in Ex parte Story, supra, and refused. There the rejected answer was sought to be placed at large upon the order book. Here it is asked to file the paper as a part of the record. Substantially, these two processes are the same, and their effect identical. The supreme court refused a mandamus in the Story Case to compel the court below to make the rejected document a part of the record upon the distinct ground that that court might properly refuse to suffer any notice to be taken on the record of the proposition to file the supplemental paper. How, then, is a rejected pleading to be made a part of the record in equity cases for the purpose of a review in an appellate court of the action of the circuit court in refusing to allow it to be filed? This point is very obscure in that practice to which equity rule 90 binds us, and I have not found any very satisfactory answer to it.

The Case of Story, supra, is frequently cited by the works on federal practice and by subsequent cases to the point that the court of original cognizance is not bound to reopen the merits of the main controversy after a mandate on appeal has come down; but of the other question involved in that case—the very one we have here—but little, if any, notice has been taken. That case does not explain how the rejected paper is to be made a part of the record for the purposes of appeal, nor do I know of any other case that does. The books are full of cases at law where a bill of exceptions is available for that purpose, and in state equity practice, as in Tennessee, there is rarely any difficulty about it. But how it is to be done in a federal court of equity is not at all clear, nor is it explained by any reading of the books on federal practice, so far as I am advised. Possibly it can only be done by mandamus compelling the court to receive and file the paper. There would be no difficulty in the English practice, but our American practice on appeal with relation to the record and the papers that go up with it is so radically different that the former scarcely furnishes an analogy. They have in England, strictly, no transcript of the record; interlocutory appeals are allowed from almost any order as well as from the final decree; and there is a petition for every appeal, which is largely used as a vehicle to convey to the appellate court the particular matter to be reviewed upon that petition, and the documents relating thereto, of every kind, used at the original hearing thereof. The appellate court uses the identical record of the original court or office

copies, and there is, in the sense of our practice, no transcript whatever for carrying the case into the appellate tribunal. In the house of lords either side prints its "case," and with it prints an appendix of the documents to be used; the expense being mitigated by agreement for a joint use of the appendixes. Technically, the original documents constituting the record are at the bar of the house for any reference that is needed. On appeal to the lord chancellor or another judge, and now on appeal to the chancery court of appeals, as I understand it, the petition for appeal, by mere reference to the documents relating to the matter to be reviewed, brings the originals for examination on review by the appellate court; and likewise there is no transcript of the record sent up, as in our practice. 3 Daniell, Ch. Prac. (1st Ed.) 149; 2 Daniell, Ch. Prac. (5th Ed.) 1499; Id. 1471, 1473; Id. 1487, note 7; Id. 1477, note 9; Id. 1484, note 5; Id. 1491; Id. 1504, note 10; Id. 1488; and particularly Id. 1003, note 3; also Id. (1st Ed.) 654.

The rule as to filing bills and pleadings before they could become a part of the record was in the English practice very strict. 1 Daniell, Ch. Prac. (1st Ed.) 508; 2 Daniell, Ch. Prac. (1st Ed.) 214; 1 Daniell, Ch. Prac. (5th Ed.) 398, 399, as to bills; Id. 754, 755, as to answers; Id. 1609, 1610, as to petitions. What is meant by the filing is found explained in the books. Bouv. Law Dict. voce "File"; 8 Enc. Pl. & Prac. 922; Id. 880; 14 Enc. Pl. & Prac. 905; Fanning v. Fly, 2 Cold. 487.

At one time the old practice in chancery followed the habit of reciting in every decree the foundation of it and the evidence offered in support of it. With such fullness was this done that every decree within itself was sufficient to indicate to a reviewing court the full error complained of, without reference to any document, except in cases where it was necessary to inspect the original. The old English practitioners and judges gave up this convenient practice with great reluctance even after the act of 3 & 4 Wm. IV, c. 94, § 10, which enacted that without specific directions from the court no such recital should be introduced into any decree, but that "pleadings, petitions, notices, reports, evidence, affidavits, exhibits or other matters or documents on which such decrees shall be founded shall be merely referred to." After this act the mere reference in any decree to a pleading or document was sufficient to make it a part of the record for the purpose of using it on an appeal from that decree. Lord Brougham's orders made to enforce that act, A. D. 1833, and which are a part of the practice referred to by our equity rule 90, declared that the old-time recitals should not be made. 2 Daniell, Ch. Prac. (1st Ed.) 666; Id. 654, pl. 2. The last clause of his order 27 declared "that, before any order made on a petition be passed, the original petition shall be filed with the clerk of the reports." Id. Mr. Daniell's subsequent editions omit a part of the text of this first edition above quoted, owing, no doubt, to subsequent changes in the practice. But our concern is to learn what the practice was under equity rule 90. Thomson v. Wooster, 114 U. S. 104, 112, note, 5 Sup. Ct. 788, 792, 29 L. Ed. 105; U. S. v. Anon. (C. C.) 21 Fed. 761, 766, note. It is said in one of the Tennessee cases above cited that, inasmuch as extraneous matter can be got into the record only by a bill of exceptions, entering an order

to make a document a part of the record was ineffective, but that a recital of the document in the decree or order would make it a part of the record; and this is, no doubt, a sound distinction, based upon the practice at law, as that case was. Wynne v. Edwards, 7 Humph. 418. I assume that it will be found that since the effect of the recitals in old chancery decrees was to make the document recited a part of the record, when recitals were abolished, as above stated, Lord Brougham's order necessarily provided that a petition which afterwards could only be referred to under that order by the decree should be filed with the clerk, no doubt for purposes of future reference in any matter arising as to the contents of the petition as well upon appeals as otherwise. I have not been able to find the point adjudged, but I infer from analogies that a decree reciting that an application to file a petition had been rejected, or an order merely referring to such a rejected petition, as required by the act of 3 & 4 Wm. IV, would, ipso facto, make the rejected petition a part of the record for all subsequent purposes, including that of a review upon appeal.

Now, the difficulty is that, while our practice also abolishes recitals in decrees, we have no rule of the supreme court, or statute, directing that a mere reference to a rejected petition should make it a part of the record, or any other rejected document, for that matter. Equity rule 86. Our practice seemingly takes no note of a pleading or other document not filed, and not allowed to be filed; and if the record may not be enlarged by a bill of exceptions carrying the rejected document, as in Tennessee, it is not clear how it can become a part of a record in the absence of recitals in the decree rejecting it, unless we hold that the mere reference to it in the decree denying it a filing with the record makes it nevertheless, pro hac, a part of the record for the purposes of inspection on appeal as to its contents. The supreme court says in the Story Case that the court below may properly refuse it a place upon the record; and, of course, the court should refuse it such a place where it proposes, as in the Story Case, to reopen the merits of the decree settled by the former appeal. This would make the rejected document an outlaw, so to speak, from the record and from the attention of the appellate court; but I cannot think a proper consideration for the practice would permit such a result. The trouble is that when the clerk comes to make up the transcript for the appellate court he will not, without some special authority, incorporate therein a rejected pleading or document, wherefore some order is necessary to require him to do that thing. Or some rule ought to be adopted which gives him general instructions as to such rejected documents in making up his transcript. That a rejected pleading or other document, upon an appeal which carries the whole case into the appellate court for review, should in some way be sent to the appellate court for its consideration in reviewing the order rejecting it, I cannot doubt.

It was said by Mr. Justice Story in Dexter v. Arnold, 5 Mason, 303, 311, Fed. Cas. No. 3,856, that in courts of the United States the decree contains a mere reference to antecedent proceedings, without embodying them, "but that for the purpose of examining all errors of law the bill, answers, and other proceedings are, in our practice, as

much a part of the record before the court as the decree itself, for it is only by a comparison with the former that correctness of the latter can be ascertained." Chancellor Cooper tells us in his edition of Daniell that it is the duty of the register to enter in the minutes of the proceedings a statement of the papers read or offered and overruled, for which he cites Westmeath v. Salisbury, 1 Moll. 421. He further says that in New York it is the duty of the clerk to enter on the minutes a statement of the pleadings, depositions, and affidavits read, or which were offered and overruled; and similarly he makes a brief note of practice in this regard in other states, including Tennessee, where the matter is accomplished by a bill of exceptions, as we have seen. 2 Daniell, Ch. Prac. (5th Ed.) 1003, and notes.

The dealing of the supreme court with evidence offered and rejected in courts of equity furnishes a possible analogy to cases of a rejected pleading. In cases at law tried by the court without a jury, either under the federal statute or under such a state practice as they have in Louisiana, or under any like practice, the bill of exceptions is resorted to and always available if needed; but it is often dispensed with by methods that will be readily familiar upon the examination of such cases. Another analogy is found in equity cases, where there is a feigned issue tried before a jury, and there is an application before the equity judge for a new trial. There, again, a bill of exceptions is available, but Mr. Justice Bradley tells us, in the cases already cited from the supreme court, that the practice in such cases permits a bill of exceptions, and that that is the only permissible use of it in equity. 2 Daniell, Ch. Prac. (5th Ed.) 1119, notes 5–8; Id. 1137; Bouv. Law Dict. voce "Postea." Evidently, then, this use of a bill of exceptions in equity cases is not applicable here. None of these analogies furnish us any guide to the practice under consideration, unless it may be with relation to rejected evidence. Our equity rule 86 abolishes recitals in orders and decrees as absolutely as the act of 3 & 4 Wm. IV did in England; but it gives no direction as to the filing of rejected pleadings or documents which have lost the benefit of the recitals that made them a part of the record, and, so far as I have found, there is no rule applicable to such a condition. Our Revised Statutes (section 698) directs that the transcript certified to the supreme court in equity and admiralty cases shall contain the record "as directed by law to be made," and copies of the proof of such entries of papers "on file" as may be necessary for the hearing of the appeal. It may be inferred from this language that, if the English practice adopted by equity rule 90 makes this rejected petition a part of the record by the reference that is made to it in the order rejecting it from the files, it already may be treated as a paper authorized by the statute to go into the transcript certified by the clerk; and it does seem to me that by the old practice already mentioned in England it would become by that reference a part of the record,—not, to be sure, a part of the technical record, such as mentioned in Rev. St. § 750, but still a part of the record necessary for the hearing on appeal as provided in Rev. St. § 698. Rules 8 and 13 of the supreme court (3 Sup. Ct. vii, x) were evidently intended to adjust the practice to the new method of

sending a transcript to the court of appeals, instead of using the original record, as in England; but no provision is made for the condition of rejected documents. Blatchf. Rules, p. 120. The distinction between the practice of making up the record in England and our own country was adverted to by Mr. Justice Miller in an action at law, in the case of Burr v. Navigation Co., 1 Wall. 99, 102, 17 L. Ed. 561; and I take it that the power of the court to direct what papers shall constitute that record which shall be transmitted to the appellate court by the transcript would not be questioned whenever such action becomes necessary because of the fact that the disputed paper has not been admitted to the files in the regular way, and that this power is an essential grant of Rev. St. § 698, if not already inherent in the court without the statute.

The nearest analogy my reading develops to the condition we have here is that of a case where the testimony at the hearing in equity is taken orally in open court, as may be done if the court permits it. Equity rule 67, last paragraph. How is that testimony to be taken and transmitted to the appellate court? Strange to say, I do not find that question answered by the cases or the books on practice or the rules, any more than the one we have in hand, and the necessity for a rule governing the practice is apparent. As said by Judge Simonton in Coosaw Min. Co. v. Farmers' Min. Co. (C. C.) 67 Fed. 31, 32:

"Under the practice in the English chancery, no testimony was ever taken in open court before the chancellor. Witnesses were examined before one of the masters in chancery, and their testimony reduced to writing and read at the hearing."

This is the common method prescribed by our equity rule 67, and when the testimony is taken in that manner, or before the examiner, it is easy enough to make a rejected document or any rejected evidence a part of the record by making it a part of the report of the master or examiner when he sends the testimony in for reading at the hearing, and no bill of exceptions can be necessary. But suppose the testimony is taken under the latest amendment to rule 67 of May 15, 1893 (149 U. S. 793, 13 Sup. Ct. iii, 3 Desty, Fed. Prac. 1785). How is it to be put upon the record for transmission in the transcript to the appellate court? The rules in admiralty direct in similar circumstances that the testimony shall be taken down by the clerk and transmitted to the appellate court. Adm. Rules 49, 50. I should say that a court of equity might resort to the same method, or might require an examiner to attend and take it down, or one of the masters, or in any convenient way; but how, then, is this written testimony to be made a part of the record, except by an order directing it to be filed as such, and which would be the equivalent in all respects of a bill of exceptions embodying the testimony, after the manner of the practice at law? In Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521, Mr. Chief Justice Waite held that, notwithstanding the acts of congress and the then existing equity rules, the court could take the testimony in an equity case viva voce when produced in the open court; but there is nothing in the case to indicate how such an examination is to be made a part of the record, though the

case decides that, unless it is made a part of the record and sent to the appellate court, no notice can be taken of it.   See Lloyd v. Pennie (D. C.) 50 Fed. 4, 11.   Since that time the specific amendment of 1893 to equity rule 67 has been adopted, as above noted, but neither the rule nor the cases direct the method of taking down the testimony and making it part of the record.   In the case of Connecticut v. Pennsylvania, 5 Wheat. 424, 5 L. Ed. 125, reference is made to our first judiciary act, and its requirement that oral testimony of witnesses examined in open court should be put upon the record by "a statement of the facts," which requirement was repealed by the act of 1803; and that act required, as does Rev. St. § 698, that a copy of the bill, answer, depositions, and all other proceedings, of what kind soever, in the cause, shall be transmitted to that court. Now, says the opinion, "previous to this act the facts were brought before this court by the statement of the judge," etc.   The case then decides that all the testimony on which the judge founds his opinion should be laid before the appellate court, but there is no indication how this is to be done, except by the statement aforesaid.

But, again, it does seem to me that, under the practice there described, the "statement of the judge" would be substantially the equivalent of a bill of exceptions, though not in that precise form; and, further, it seems to me that if now the court should take the testimony under equity rule 67, as amended in 1893, by an oral examination in open court, it must, substantially and necessarily, put the testimony in the record by verifying the writing containing it, either by an order upon the record to that effect, or otherwise, very much after the manner of a bill of exceptions, and that likewise whenever it becomes necessary to make a rejected pleading or other paper a part of the record, similarly, it must be done by a process that is the equivalent of the common-law bill of exceptions.   I am constrained to believe, notwithstanding the decision in Ex parte Story, supra, and the other cases cited, that for that strictly limited purpose such a method must be resorted to as has been done in Tennessee since the statutes abolished recitals in chancery orders and decrees. What Ex parte Story and similar cases really decide that is of serious concern is that a case in equity in the appellate court is not to be narrowly tried upon a bill of exceptions, after the manner of such a trial in a case at law; that is to say, that no such function as is performed by the bill of exceptions in limiting the questions of evidence or others that are to be tried upon a writ of error is known or can be permitted in a court of equity.   But that so far as the bill of exceptions becomes a mere vehicle—First, in which to place a rejected paper or any rejected evidence, or any admitted evidence, for that matter, which has been orally given, and not otherwise preserved in writing; and, secondly, for the transmission of these to the appellate court for its consideration on appeal,—it is not so certainly prohibited by Ex parte Story and the other cases.   Yet, in the face of those cases, I am not prepared to adopt that practice, even for that purpose, convenient as it is, but have concluded that if we have jurisdiction, after an appeal has been granted, to make any further orders in the case (see Rector v. Lipscomb, 141 U. S.

557, 12 Sup. Ct. 83, 35 L. Ed. 857), I shall follow the precedent made under a somewhat similar perplexity in Westmeath v. Salisbury, 1 Moll. 421, supra. I am not willing, in the language of the order presented by counsel, for the plaintiff to direct that the said petition "shall be filed for the purpose of making the same a part of the record," after having, on an application to file it, rejected it wholly and disallowed its filing. The very object of that disallowance was to prevent it from becoming "a part of the record." It was intended that it should have no place in the case for the purpose of reopening it after the mandate came down. An appeal having been taken from that order, I shall do what was done by the lord chancellor in the case last cited, and direct that the document shall be transmitted to the court of appeals, so that their honors may determine whether or not the order rejecting it was correct, and whether or not it shall become "a part of the record" in the case. By this action the plaintiff will have leave to apply to the court of appeals to use and read the petition that was rejected, for their information, or for any order whatsoever that their honors, "in their greater wisdom, may be pleased to make in regard thereto." For this purpose the clerk will be directed to transmit a copy of the rejected petition with the transcript which he shall certify to that court upon this second appeal. The order may be drawn as follows:

"On application of the plaintiff company, the order heretofore entered, denying leave to file its petition, is so far modified that the clerk of the court is directed to certify the rejected petition to the circuit court of appeals in the transcript which he shall send to that court upon the appeal from that order already taken, so that that court may determine whether or not the petition was improperly refused a filing, whether or not it is properly a part of the record in this case, or may make any other or further order in relation thereto which to the said court may seem just and right in the premises."

Ordered accordingly.