CLYDE et al. v. RICHMOND & D. R. CO. et al. (PATTERSON, Intervener).

(Circuit Court of Appeals, Fourth Circuit. February 4, 1896.)

No. 125.

1. EQUITY PRACTICE—ISSUE FOR JURY—EFFECT OF VERDICT—REVIEW ON APPEAL.
    The verdict of a jury on an issue out of chancery is merely advisory, and the chancery court may grant a new trial, or dismiss the bill, in opposition to the verdict. On a motion for new trial, the party submitting it must procure, for the use of the chancellor, notes of the proceedings and the evidence. These then become a part of the record, and are subject to review on an appeal taken from the decree entered by the chancery court.

2. MASTER AND SERVANT — INJURY TO RAILROAD BRAKEMAN — CONTRIBUTORY NEGLIGENCE.
    A railroad brakeman, who, in his contract of employment, stated that he had had three years' experience in that capacity, and knew it was dangerous to climb up the side of a box car by the ladder while the train was mov-

ing, was killed while attempting, without any urgent necessity therefor, to climb up a ladder whose grab iron he knew was defective, and which it was part of his special duty to examine. *Held*, that he was guilty of contributory negligence, and there could be no recovery.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

The appellant, administrator of C. C. Patterson, deceased, filed his petition in the case of W. P. Clyde vs. Richmond & Danville Railroad Company, wherein receivers had been theretofore appointed by the circuit court. His petition set forth, in substance, that his intestate had been employed by the receivers as a brakeman on one of their trains, and that on 21st June, 1892, while in the discharge of his duty as brakeman, the said Patterson met his death by an accident caused by the negligence of the said receivers or their agents. The prayer of the petition was, either that he be allowed to sue the receivers for damages in the circuit court for the Eastern district of Virginia on its law side, or that he be made a party in the main cause, and thereupon an issue be directed out of chancery to settle the facts and to award damages, pursuant to the provisions of a statute of the state of Virginia in such case made and provided. Hearing the petition, the circuit court (his honor, Judge Goff, presiding) directed an issue out of chancery to ascertain the facts of the claim and award damages if proper. The petitioner was made the actor in these proceedings, and the issues were directed as follows: (1) Whether C. C. Patterson came to his death through the negligence of the receivers of the court in this cause, or their agents, as averred in the petition. (2) What damages, under the Virginia statute, the petitioner is entitled to recover from the receivers, and to whom and in what proportions said damages should be awarded.

These issues were made up, and were tried in the circuit court before his honor, Judge Hughes, and a jury. A verdict was found for the petitioner in the sum of $5,000. The proceedings in the cause, with the testimony, requests to charge, rulings of the presiding judge, and his charge, were certified to the court of chancery; and, upon consideration thereof (his honor, Judge Hughes, presiding), the verdict was set aside, and a new trial granted. The issues were again tried in the circuit court before his honor, Judge Hughes, and a jury, and a verdict again rendered for the petitioner for $5,000. This verdict was set aside by the trial court, and all of the proceedings on the trial of the issue, with the testimony, the exceptions taken at the trial, requests to charge, and charge of the trial judge, and his ruling as to the verdict, were certified to the court of chancery. In that court (his honor, Judge Goff, presiding), the petitioner moved the court to confirm the verdict. The court, having considered the petition, all the evidence adduced at the two trials heretofore ordered, and the verdicts and other proceedings had at said trials, held that the petitioner had no cause of action against the receivers because of the death of his intestate, and dismissed his petition. Thereupon the petitioner appealed to this court to reverse the decree.

S. S. P. Patteson, for appellant.

Beverly B. Munford, for appellees.

Before SIMONTON, Circuit Judge, and BRAWLEY, District Judge.

SIMONTON, Circuit Judge (after stating the case). No question has been made, and, indeed, none could have been made, as to the right of the court ordering the issue to disregard the verdicts of the jury. "A verdict upon an issue ordered by a court of equity is in no just sense final upon the facts it finds, or binding upon the judgment of the court. The court may, at its pleasure, set it aside, and grant a new trial; or, disregarding it, may proceed to hear the cause, and decide in contradiction of the verdict; or it may adopt the verdict

sub modo, and give it a limited effect." Story, J., in Allen v. Blunt, 3 Story, 742, Fed. Cas. No. 216; 2 Daniell, Ch. Prac. (3d Am. Ed.) 1115. "The verdict upon an issue which a court of chancery directs to be tried at law is merely advisory. A motion for a new trial can be made only to that court, and the party submitting it must procure, for the use of the chancellor, notes of the proceedings at the trial and of the evidence there given. The evidence and proceedings become then a part of the record, and are subject to review by the appellate court, should an appeal be taken from the decree." Watt v. Starke, 101 U. S. 247.

This leads to an examination of the evidence. The testimony of the witnesses taken at both trials is in the record. The uncontradicted facts are these: The intestate, C. C. Patterson, a young man, 21 years of age and able-bodied, sought employment with the receivers on 18th May, 1892. In answer to a series of printed questions, he wrote, among other things, that he had had experience in railroad service on the Louisville & Nashville Railroad Company for 3 years, and that he knew that it was dangerous to climb up the side of a box car, by the regular ladder or otherwise, while the train is moving. He was accepted, and put on duty as a train-hand, and was so engaged on the 21st June, 1892. The train upon which he was employed was what is known as a "ragged train," consisting of box cars and flat cars. There were two other brakemen on the train besides Patterson. One of them had charge of the forward part of the train, another of the rear of the train, and Patterson was in the middle of the train. Each had special duties assigned to him. It was a part of the duty of Patterson to inspect the tops of the trains, in order to see if any of the cars were out of order, in any respect, as to their top hamper, and also to assist in coaling when they reached a coaling station. One of the box cars, No. 1,510, was in the forward part of the train,—not in that part of it where Patterson was stationed, but between him and the locomotive. It had a ladder on the side, but the grab iron at the top of the ladder was not in order. The grab iron, as described by a witness, and its uses, are these:

"On this car (1,510), and on other cars with a tin roof, we have a footboard at the end of the car; and the grab iron is a piece of iron about that long [witness indicates], I suppose as large as your thumb, a foot on each side of it, and fastened on with a flat, just the same rod as used on a ladder. On some cars that is fastened to a board, and this board is screwed to the top of the car, and, with a grab iron, is used, in going up and down the ladder, to pull yourself up. It is on the top of the car, about a foot or 18 inches from the level of the car."

When the train was about two miles from Barksdale, a coaling station, Patterson ran on the flat cars and up the ladder on 1,510. He fell, the train passed over him, and he died from the effects of the wound he received. There was found on the ground the grab iron, adhering to the plank, which had the screws in it, and also showed that nails had been driven in it. This, evidently, was the grab iron on that car. Patterson had advised other men on the train to be careful of this car, as the grab iron was loose, and one

of the witnesses says that he had told him, at South Boston, a station on the road, that he "had like to have fell off that car" at Clover, another station, beyond South Boston, passed during that trip. There was no positive evidence that this car had been inspected and thoroughly overhauled. The witnesses knew that it had been inspected, and that their general practice is to overhaul a car on inspection. But they cannot remember any more.

It is evident, from this testimony, that the deceased, there being no urgent necessity for his act, climbed up a ladder whose grab iron was dangerous, within his own knowledge, and whose condition it was a part of his special duties to examine; that he knew that it was dangerous, under any circumstances, to climb a ladder on a car while the train was moving. It is impossible to escape the conclusion that he, without necessity, took a known risk, and that he contributed to the accident by his own act. Railroad Co. v. Herbert, 116 U. S., at page 655, 6 Sup. Ct. 590. Under any circumstances, and in a doubtful case, the concurrent opinion of two judges, who heard and examined this case, would be entitled to great weight. A review of the testimony induces us to concur with them.

Decree of the circuit court is affirmed.