## MARBLE COMPANY *v.* BLACK.

### (*Knoxville.* September 16, 1890.)

1. PLEADING AND PRACTICE. *Amended declaration. Recital of leave to file.*
Where the record elsewhere shows that leave was "granted to amend the declaration," it is not essential that the amended declaration recite, upon its face, that it is filed by leave of the Court.

2. SAME. *Same. Profert of letters of administration.*
When the original declaration makes profert of the plaintiff's letters of administration, it is not essential that the amended declaration repeat such profert.

3. SAME. *What is sufficient profert of letters of administration.*
Profert of letters of administration is sufficiently made where the declaration avers the plaintiff's representative character, and adds: "Letters of administration being here shown to the Court."

4. SAME. *Objection to profert comes too late when first made in Supreme Court.*
Objection to profert, or for want of it, comes too late when made for first time in this Court, after plea to and trial upon the merits.
Cases cited and approved: Union Bank *v.* Osborne, 6 Hum., 319; Lowry *v.* Medlin, 6 Hum., 451; Walt *v.* Walsh, 10 Heis., 316.
See Code, §3599 (M. & V.); §2893 (T. & S.).

5. SAME. *Issue and evidence as to plaintiff's representative character.*
Unless the plaintiff's averred representative character is put in issue by special plea, no proof on that point is essential. That fact is admitted by the general issue.
Cases cited: Cheek *v.* Wheatly, 11 Hum., 556; Glass *v.* Stovall, 10 Hum., 453; Fowlkes *v.* Railroad, 9 Heis., 829.
See Code, §3620 (M. & V.); §2910 (T. & S.).

6. SUPREME COURT PRACTICE. *Charge of Court not part of record, when.*

Charge of Court is not part of the record, though copied into it, where it follows the bill of exceptions, and is not therein referred to.

Cases cited: Railroad *v.* Foster, 88 Tenn., 673; Huddleston *v.* State, 7 Bax., 55; Bass *v.* State, 6 Bax., 583; McGhee *v.* Grady, 12 Lea, 90; Owens *v.* State, 16 Lea, 1.

7. SAME. *Will not reverse upon the facts, when.*

The Court reviewed at length the facts of the case, and refused to disturb the verdict on the assignment of error that it was not sustained by the evidence.

8. CONTRIBUTORY NEGLIGENCE. *Not imputable, when.*

The doctrine re-affirmed which is held in Railroad *v.* Gurley, 12 Lea, 47, that one who has been placed in a position of danger by another's fault or negligence will not be denied relief for injury resulting therefrom, by reason of the fact that he, "in the excitement of the moment, lost his presence of mind, and, in an honest effort to save his life, by mistake pursued the course to lose it."

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. S. T. LOGAN, J.

S. G. HEISKELL, HENDERSON & JOUROLMON, and N. N. OSBORNE for Marble Company.

CHARLES NELSON and CALDWELL & MYNATT for Black.

CALDWELL, J. While in the employment of the McMillan Marble Company, William Shrum received

physical injuries from which he died. E. C. Black, as administrator of said Shrum's estate, brought this action of damages against the marble company for the wrongful killing of his intestate, and recovered a judgment for $2,500. The marble company appealed in error to this Court, and has here assigned several grounds for reversal and new trial.

*First.*—The assignment made on the ground that the amended declaration fails to show that it was filed by leave of the Court, is bad, because the record recites that leave was "granted to amend the declaration."

*Second.*—The assignment claiming that neither the original nor the amended declaration tendered the plaintiff's letters of administration, is as obviously not well taken.

It is averred in the original declaration that the plaintiff had been duly qualified as administrator of William Shrum, deceased, and after that averment profert is made in the usual form—"Letters of administration being here shown to the Court." The amended declaration, being but an additional count to the original declaration, was good without a repetition of the profert.

Moreover, the objection comes too late, being made for the first time in this Court. If there had been no profert at all, the defendant could have taken advantage of that fact by demurrer only. Failing to do that, and pleading to the merits, he waived the objection. Code. (M. &

V.), § 3599; Caruthers' H. of L., Sec. 199; *Union Bank* v. *Osborne*, 6 Hum., 319; *Lowry* v. *Medlin*, *Ib.*, 451; *Walt* v. *Walsh*, 10 Heis., 316.

*Third.*—It is also urged that this Court should reverse the judgment, and grant a new trial, because the plaintiff failed to produce his letters of administration as proof on the trial in the Court below. There is no answer in the record to this assignment, as there is to the two just mentioned.

The bill of exceptions, which purports to contain all the evidence, fails to show any proof of plaintiff's qualification as administrator of the deceased; hence it is conclusively presumed that no such proof was adduced. Nevertheless, this assignment is bad in law under the pleadings in this case. The plaintiff averred his authority to maintain the suit as personal representative of the deceased, by stating that he had been duly qualified as administrator on a certain day by the County Court of Knox County, and making profert of his letters of administration.

The defendant made a general denial by a plea of not guilty, and on this plea went to trial.

This plea of the general issue admitted the plaintiff's right to the representative character in which he sued, and rendered it unnecessary for him to make proof of his appointment and qualification; it was an admission that he was what he assumed to be—the administrator of the deceased. That he rightfully possessed that charac-

ter, the defendant could call in question only by a special plea of *ne unques* administrator.

This rule is well settled, the only conflict of decision being as to its application where the cause of action accrued after the death of the deceased. *Cheek* v. *Wheatly*, 11 Hum., 556; *Glass* v. *Stovall*, 10 Hum., 453.

With Judge Totten, who delivered the opinion in the Cheek case, *supra*, we can see no reason why the rule' of practice should not be uniform, and apply in the same manner where the cause of action originated after as before the decease of the intestate. But' the case at bar is not of that class of cases concerning which the conflict of decision exists; for here the cause of action accrued on the day before the death, when the injuries were inflicted. *Fowlkes* v. *Railroad Company*, 9 Heis., 829.

*Fourth.*—Errors are assigned on certain portions of the charge of the trial Judge to the jury. These cannot properly be considered, because the charge is not before this Court. What seems to have been the Court's instruction to the jury is copied into the transcript, but it appears after the conclusion of the bill of exceptions, is in no manner connected with it, or otherwise made a part of the record. No rule is more familiar and better settled than that which impels this Court to disregard such a paper altogether. *Railroad Companies* v. *Foster*, 4 Pickle, 673; 7 Bax., 55; 6 Bax., 583; 12 Lea, 96; 16 Lea, 1.

*Fifth.*—The assignment that the verdict is against the charge of the Court is bad for a similar reason. In the absence of the charge, it cannot be determined whether or not it was duly regarded by the jury in making up their verdict.

*Sixth.*—The only other assignment of error is based upon the contention that the verdict is not sustained by the evidence; that the facts of the case show no negligence on the part of the defendant.

This makes it necessary to notice the material parts of the evidence somewhat in detail. The defendant company was operating a marble quarry in Knox County. The deceased, a young boy fifteen and a half years old, was one of its employes. He was an obedient and faithful hand. On the day of the accident he was, by special direction, digging the dirt from one of several rocks in a "bank" from fifteen to eighteen feet high. This rock seems to have been at the base of the bank, and was only about four feet out of the downward range of another rock, which projected from the bank several feet above. From some unexplained cause this projecting rock fell, and, in its fall, struck young Shrum and inflicted such injuries upon him that he died the following day. The falling rock attracted his attention, and in his effort to escape he ran in its course and was crushed. Had he run in any other direction, as he might have done, or had he kept his place, he would have been uninjured. These facts are established by several witnesses, and from them it

is contended that the company was without fault, and the deceased alone brought about his destruction. Nothing else appearing, this conclusion would seem to be irresistible. Facts yet to be stated, however, materially change the legal aspect of the case. Among the various dangers incident to quarrying is that of projecting rocks, which often "slip" or fall. This danger is so great that it is made the duty of the foreman "to go around and test" such rocks, and have them removed when they become dangerous. So important was this work of removal, and so necessary to the protection of the employes, that any of the hands were at the foreman's command for its performance. The rock whose fall was so disastrous to this young boy had not been tested at all; yet the superintendent of the company put him *to work* near by—so near that its sudden falling would naturally, if not inevitably, have alarmed and put to flight a person of more mature years. It was not only reasonable that *the deceased* should believe himself in danger, and, therefore, seek safety in flight, but *others* who witnessed the falling of the rock and his situation, were of the same opinion, and called to him "to get out of the way." He was not at fault for accepting work, under direction of his superior, so near this dangerous rock; for the projection was so patent to all that he had a right to assume that the foreman had tested it and found it safe, and that the superintendent would not otherwise send him to such a place.

To our minds, these facts abundantly sustain the verdict. The failure to test and remove this impending rock, and the placing of this young boy in such close proximity to it, are facts from which an intelligent jury may well have imputed negligence to the marble company. Indeed, we do not see how they could reasonably have reached any other conclusion.

That the deceased, in the excitement of the moment, lost his presence of mind, and, in an honest effort to save his life, by mistake pursued the course to lose it, is no excuse for the negligence of the defendant which caused the disaster. *Railroad* v. *Gurley*, 12 Lea, 47.

The statement of one of the defendant's witnesses that he saw fresh marks of a pick under the rock that fell, and that the deceased must have been digging there at the time, and in that way caused it to fall, was probably not credited or given much weight by the jury. It was opposed by the fact that the boy's pick was found in its proper place and position, "sticking" in the ground by the other rock where he was directed to work.

Let the judgment be affirmed.