State *v.* Hawkins.

STATE *v.* HAWKINS.

(*Nashville.*    January  16,  1892.)

1. BILL OF EXCEPTIONS.    *Essential in Chancery cause tried by jury.*

If a cause has been determined in Chancery Court by jury trial, the charge of the Court, and the evidence and affidavits introduced in the lower Court, cannot be considered upon appeal to this Court, though copied into the transcript by the Clerk, unless they have been made part of the record by proper bill of exceptions.

Code construed: §§ 3872, 3873 (M. & V.); §§ 3155, 3156 (T. & S.).

Cases cited and approved: James *v.* Brooks, 6 Heis., 150; Bank *v.* Oldham, 6 Lea, 729; Railroad *v.* Foster, 88 Tenn., 671.

2. SAME.    *Papers that are not part of.*

Papers copied into transcript that do not purport to be part of bill of exceptions constitute no part of the record.

3. SAME.    *Want of Judge's signature fatal.*

Unless bill of exceptions has been duly authenticated by the trial Judge's signature, it cannot be treated as part of the record, although there be a recital in the record that the bill of exceptions had been signed by the Judge and made part of the record.

Cases cited and approved: Garrett *v.* Rogers, 1 Heis., 320; Wynne *v.* Edwards, 7 Hum., 419.

FROM  CANNON.

Appeal  from  Chancery  Court  of  Cannon  County. B.  M.  WEBB,  Ch.

Attorney-general PICKLE and MURRAY & SPURLOCK for State.

JONES & HOUSTON and JAMES H. CUMMINGS for Hawkins.

LURTON, J. The cases of the *State* v. *J. B. Hawkins and Wm. McMahon* and *State* v. *J. B. Hawkins and J. B. Smith* were consolidated and ordered to be heard together.

A decree of the September Term, 1890, recites that the attorneys for the State demanded a jury to try the issues of fact to be submitted, and that a jury was duly impaneled and sworn to try the issues tendered and a true verdict render.

The bills of the State alleged, in substance:

*First.*—That an application was made to the Comptroller for pensions, under the Act of 1887, by the defendants J. B. Smith and Wm. McMahon; that J. B. Smith represented in his application, and affidavits accompanying the same, that he had lost the use of both of his legs while engaged in actual service of the Confederate Government, and had continued without the use of his legs ever since.

That Defendant McMahon, in his said application and accompanying affidavits, alleged that he had lost both of his eyes while engaged in the same service, and had remained blind since.

*Second.*—That the representations in said appli-cations were in fact wholly false and untrue, and

that the said Smith had not in fact lost the use of his legs, nor the said McMahon the use of his eyes.

*Third.*—The bills further charged that the defendant, Hawkins, as Chairman of the County Court of Cannon County, did indorse upon said applications and certify to the Comptroller that he had examined said applicants for pensions, and also the witnesses making the affidavits in support of the applications, and from his said examination the applicants came within the provisions of the Act, and were entitled to the pensions as provided by law; that at the time of making this certificate the said Hawkins knew the same was false, and that Smith still had the use of his legs and McMahon the use of his eyes.

*Fourth.*—That in addition to these false certificates said Hawkins personally presented said applications and affidavits to the Comptroller, and represented to that officer that of his own knowledge he knew the facts stated in the applications and affidavits to be true.

*Fifth.*—The bills allege that by reason of these false and fraudulent applications, certificates, indorsements, and representations, a pension had been granted to each of the applicants, and $825 had been thus fraudulently obtained from the State by Defendant Smith, and $1,325 by Defendant McMahon.

*Sixth.*—That said Hawkins had been induced to aid said fraudulent applications, and to make false

certificates and representations, upon an agreement and understanding that he was to receive a pecuniary compensation out of the fund to be derived thereby. The bills sought decrees against Smith and Hawkins, and McMahon and Hawkins for the sums thus obtained. The issues of fact submitted to the jury involved the truth or falsity of every question of fact presented by the issues made in the pleadings. Upon evidence submitted the jury found that the applications and accompanying affidavits were true; that the certificate made by Defendant Hawkins was true; that the affidavits presented by said Hawkins to the Comptroller were true, and not false as charged. They also found that said Hawkins had received nothing to influence him to sign the certificates or procure the pensions. A decree in the cause recites in full the findings of fact by the jury, and then proceeds as follows: "When the Court is of opinion that the findings of the jury upon the facts are correct. The Court is of further opinion that the allegations of the bill are met and denied by the answer and not sustained by the proof." The bills in the two cases were therefore dismissed. From this decree the relator has for the State prayed and obtained an appeal. From what we have stated it must be manifest that unless the evidence heard by the jury and the charge of the Court are properly parts of the transcript that this appeal must prove ineffectual. Section 3872 (M. & V.) provides for a broad appeal "from the judgment or decree of the Circuit

or Chancery Court, in a matter of equity tried according to the forms of the Chancery Court," and that in such case the appellant shall "have a re-examination" in this Court of "the whole matter of law and fact appearing in the record."

By the next section the following provision is made: "Issues of fact in Chancery, made up on demand of either party, and tried by jury according to the forms of a Court of Law, are not embraced in the foregoing section, and errors in the proceedings therein can only be corrected as errors are corrected in actions at law."

This provision has been construed as requiring that the verdict of a jury on issues of fact submitted to them in Chancery shall be given the same weight as in a Court of Law, and that until set aside it is equally conclusive. It has also been construed as requiring the dissatisfied party who seeks a correction of errors, either in the admission or exclusion of evidence or in the charge or in the refusal of a new trial, to make up a bill of exceptions as at law. *James* v. *Brooks*, 6 Heis., 150; *Bank* v. *Oldham*, 6 Lea, 729.

Neither the evidence nor the charge nor the rulings on evidence have been made a part of the record by bill of exceptions. The decree granting appeal does recite that the appellant tendered his bill of exceptions, which was ordered to be made part of the record. This is the usual judgment entry, but in fact no bill of exceptions appears to have been signed by the Chancellor. An enormous

mass of evidence, consisting in part of depositions and in part of what purports to have been oral evidence, is embraced within the transcript.

On page 49, preceding this evidence, is such a recital as usually precedes a bill of exceptions, being a recital that "on the trial of the issues submitted to the jury in this cause, the following issues of fact and oral proof was introduced by the complainant." Then follow indiscriminately depositions, interlocutory rulings, affidavits, and oral evidence.

On page 367 this evidence concludes without any statement that this was the whole of the evidence submitted to the jury, or any signing of the same as a bill of exceptions, or statement that it is intended as such. This is immediately followed by the caption of the Court, and then by a decree setting the causes for trial on a particular day of the term. This is followed by a decree ordering an attachment to issue for a derelict witness, and this by an affidavit of counsel asking for an attachment, and this by the writ of attachment and return thereon. Next comes a paper styled "charge of the Court." This charge is signed "B. M. Webb, Chancellor." But nothing here purports to make it, nor the evidence preceding, a part of a bill of exceptions.

We are therefore constrained to hold that neither the evidence nor the charge nor the action of the Court upon the motion to discharge a juror, are properly parts of the record.

10—7 P

Merely copying a charge into a transcript has been repeatedly held as not making it a part of the record. It must be made so by bill of exceptions. *Railroad* v. *Foster,* 88 Tenn., 671, and cases cited.

We have no authentication by the Judge of what the Clerk has inserted as evidence heard by the jury. A bill of exceptions, not signed by the Judge as a bill of exceptions, cannot be treated· as a part of the record, though there be record recital that one was signed and made a part of the record. *Garrett* v. *Rogers,* 1 Heis., 320; *Wynne* v. *Edwards,* 7 Hum., 419.

Decree affirmed. State will pay all costs of cause.