## COSMOPOLITAN LIFE INSURANCE COMPANY v. NANNIE WOODWARD.

Middle Section. January 28, 1928.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

B. O. Briley and Lackey & Loser, of Nashville, for plaintiff in error.

W. S. Lawrence and H. H. Moses, of Nashville, for defendant in error.

FAW, P. J. Will Woodward died at the General Hospital in the City of Nashville on April 20, 1926, and this suit was instituted before a Justice of the Peace of Davidson county on May 19, 1926, by his widow, Nannie Woodward, against the Cosmopolitan Life Insurance Company to recover the sum of $320 alleged to be due the plaintiff under an insurance policy issued February 22, 1926, by the defendant on the life of plaintiff's deceased husband, and in which policy plaintiff was named as the beneficiary.

The defendant appealed from an adverse judgment of the Justice of the Peace to the circuit court of Davidson county, and the case was thereafter tried to a jury in the Third Circuit Court, with the Honorable W. C. Cherry, Special Judge, presiding.

The jury found the matters in controversy in favor of the plaintiff, and found that the defendant was indebted to the plaintiff in the sum of $320, for which sum judgment of the court against defendant and the surety on its appeal bond was accordingly rendered. After its motion for a new trial had been overruled, the defendant prayed an appeal in the nature of a writ of error to this court, which was granted by the trial court and perfected by the defendant.

For convenience, the parties will be designated herein as plaintiff and defendant, respectively, as they appeared on the record in the circuit court.

In this court, twelve assignments of error have been presented by counsel on behalf of defendant; but, on the record before us, defendant is not in a position to rely upon any of its assignments of error for the reason that the written instruments and documents upon which its defenses were based in the trial court have not been made a part of the record on appeal, and the further reason that the charge of the court to the jury (to which four of the assignments of error are directed) was not preserved as a part of the record. In this respect, the record is in a condition quite similar to that of the record in the case of Southern Insurance Company v. Anderson, 130 Tenn., 482, 172 S. W., 318.

The defendant's first assignment, in the instant case, is that the trial court erred in refusing to sustain the motion of the defendant to direct a verdict in favor of the defendant, made at the conclusion of all the plaintiff's proof and renewed at the conclusion of all of the proof; and defendant's second assignment is that there is no evidence to sustain the verdict of the jury.

In support of its first and second assignments, supra, the defendant advances two, and only two, propositions, and these two propositions were specified in the motion for a peremptory instruction below. The first of these propositions is that under the proof the insured was not in "sound health" at the time the policy was issued, and that the policy, by its own terms, did not become operative unless the insured was in sound health at that time. It is apparent that if this contention is to be maintained, it must find support in the terms and provisions of the policy which, although put in evidence on the trial below, is not a part of the record in this court. The manner in which the policy was introduced at the trial before the jury will appear from an excerpt from the testimony of the plaintiff, as follows:

"DIRECT EXAMINATION."

By Mr. Lawrence:
"Q. Is this Nannie Woodward? A. Yes, sir.
"Q. How old are you? Thirty-six.

"Q. Was Will Woodward your husband? A. Yes, sir.

"Q. Is he now dead, deceased? A. Yes, sir.

"Q. What was the date of his death? A. The 20th of April.

"Q. The 20th of April, 1926? A. Yes, sir.

"Q. When were you married to Will Woodward? A. July 8, 1925.

"Q. You were married to him July 8, 1925? A. Yes, sir.

"Q. Where was he living when you were married to him? A. No. 1629 State Street.

"Q. Who was he living with? A. James Brown.

"Q. How long had you known him before you were married? A. Six months.

"Q. What was your husband's business when you married him? A. Hauling coal and ice.

"Q. What was his business when he died, April 20, 1926? A. Hauling coal and ice.

"Q. So you had been married to him from July until the next April? A. Yes, sir.

"Q. Did he have a policy in the Cosmopolitan Life Insurance Co. when he died? A. Yes, sir.

"Q. Is this the policy? A. Yes, sir.

"Q. I want to make that Exhibit A to the testimony? A. Yes, sir.

"The Court: Is there any dispute that the policy was issued, delivered and premiums paid, or is the only dispute as to whether the deceased was in such health that the policy was not in force?

"Mr. Briley: There is no dispute as to whether the policy was issued and the premiums paid.

"The Court: It is stipulated that the paper exhibited was in force on the life of the insured at the time of his death, and the premiums were paid up and the policy was in force if the representations in the policy as to the health of the assured, within the law, are correct and true.

"Now, the policy may be considered as filed and considered as read and that any part of it be read to the jury whenever that becomes material, but as far as the plaintiff is concerned, that is the prima facie case."

The policy which the plaintiff thus put in evidence as Exhibit A to her testimony is not copied into the bill of exceptions or elsewhere in the transcript. It is stated in the bill of exceptions (on the last page) that "All the Exhibits are to be sent up in their original form." A detached envelope accompanies the transcript, in which envelope we find a number of documents, and among them one purporting to be an insurance policy issued by defendant Cosmopolitan Life Insurance Company on the life of Will Woodward for $320, and in which the name of Nannie B. Woodward appears as the beneficiary. This policy bears an indorsement, without date,

in these words: "Identified, W. C. Cherry, judge;" but it bears no indorsement, or mark of any kind, indicating that it is Exhibit A to the testimony of Nannie Woodward, or that it is a part of the record in this case in the circuit court, or that it was ever filed in that court.

The second of the two propositions on which defendant relies in support of its first and second assignments of error is that "the proof shows that this policy had been assigned to an undertaker, and therefore the plaintiff has no legal interest in this suit." With reference to defendant's claim that the policy "had been assigned to an undertaker" by the plaintiff, we quote from the cross-examination of plaintiff as follows:

"Q. You made an assignment of this policy to Thomas-Jones-Baker & Co., funeral directors, 319 Second avenue, South, have you not? A. Yes, sir.

"Mr. Lawrence: I don't think the company could take advantage of that.

"The Court: I will let you re-examine on that. I understand their point is the legal title was in these funeral undertakers. I will allow an amendment if necessary. I know what this is, it is in the nature of a mortgage, while a sale on its face and I would allow an amendment for her own benefit and for the use and benefit of these people if it subsequently develops they had any real interest. Let the amendment be made at the proper time, but you will have to wait until she is re-examined and prove the circumstances and then I will act on it."

And on re-examination, plaintiff testified further as follows:

"Q. The assignments you made to undertakers, what is that paper for $114. What was that for? A. To bury him.

"Q. Did you bury him? A. No, sir, I didn't pay it.

"Q. Who did pay for that? A. It has not been paid.

"Q. That was what it was for? A. Yes, sir.

"Q. Just to secure them so they would bury him? A. Yes, sir.

"Q. And you are still willing for that to stand? A. Yes, sir."

In the aforementioned envelope there is a loose paper purporting, from its contents, to be an assignment by Nannie Woodward to Thomas-Jones-Baker & Co., Funeral Directors, of an insurance policy issued by the Cosmopolitan Life Insurance Company on the life of Will Woodward. The words "Identified, W. C. Cherry, Judge," but without date, are written on the face of this last-mentioned document, and it is also marked (in a different handwriting) "Ex. No. 5 Nannie Woodward," but it does not appear to have been filed and it bears no marks which serve to identify it as a part of the record of this case in the circuit court. The record does not show, so far as we have been able to find, that plaintiff was at any time asked to make the said assignment to the undertaker, about which she was

questioned, an exhibit to her testimony, but defendant's counsel was seemingly under the impression that same was made Exhibit 5 to plaintiff's testimony, as appears from the following excerpt from the testimony of T. H. Durham, defendant's Nashville manager and a witness for defendant, viz:

"Q. Now, Exhibit No. 5 to her testimony, is an assignment to the funeral directors. That has been accepted by your company?

"The Court: That don't make any difference. I have ruled on that. You can get that in the record.

"By Mr. Briley:

"Q. That was filed and accepted by your company? A. Yes, sir."

It should have been stated heretofore, with reference to the first proposition on which defendant relies in support of its first and second assignments of error, supra, that the certificate of Dr. W. L. Kirby, attending physician, furnished to defendant by plaintiff as a part of the proofs of death, evidently constituted the basis of the defendant's contention that the insured was not in sound health at the time the policy was issued, and the proofs of death are not in the transcript, but certain unattached documents, not marked filed, and bearing the same indefinite and undated identification as those heretofore described, are among the papers found in the afore-mentioned envelope.

Through its third assignment the defendant says that the circuit court erred in refusing to submit as evidence in this case a copy of the death certificate filed with the Health Department of the State of Tennessee, which was offered as evidence by the defendant and was excluded over the objection of the defendant.

The fourth assignment is that the court erred in permitting the plaintiff to introduce as evidence the application of the deceased for insurance, which application was introduced over the objection and exception of the defendant.

The fifth assignment is that the court erred, after permitting the plaintiff to introduce the application of the deceased for insurance with defendant company in not permitting Dr. Bradford, who made the inspection, to testify as to what kind of examination he made of the deceased when making the inspection. (The excluded testimony is set out in the assignment).

The sixth assignment is as follows: "The court erred in stating before the jury during the trial of the case, the following: 'I am going to hold the plaintiff is not estopped by the reason that she filed this statement of Dr. Kirby's and I am going to hold that the thing that is in my mind, as to the probative effect of these statements, both of which are in the same shape, neither are proof in court under oath by the party who makes the statement, but one of them was introduced into the case by the plaintiff, who filed this case. It is true she was an ignorant woman. The other one was a

thing on which the policy was based, and while it is not under oath, I am a little troubled about how to charge the jury they should consider these two papers.' ''

The sufficiency of these assignments of error cannot be tested without an examination of the documents mentioned therein, respectively. These documents are not in the transcript, and a paper (found in the aforesaid envelope), purporting to be a copy of a "death certificate" from the State Health Department, lacks authentication to the same extent as the exhibits heretofore described. Another document found in the envelope and purporting, from its contents, to be an application, made by Will Woodward to the Cosmopolitan Life Insurance Company, for insurance, bears no marks of authentication by the trial judge and no identifying marks of any kind, except the words "Ex. A. Durham."

The unattached documents to which we have referred are, in our opinion, not a part of the record to which we can look. They were not filed in the trial court. The case of Southern Insurance Company v. Anderson, supra, was an action on an insurance policy, brought and tried in the circuit court and appealed by the insurance company. In the opinion of the Supreme Court in that case (at pages 489-490) it is said:

"It might be proper to add that the plaintiff in error is really not in a position to make any of the points it has urged in this court. Practically all its defenses are based on provisions of the policy, the application, and the proof of death. None of these instruments are copied in the bill of exceptions. The bill of exceptions directs that these papers and others, referring to them as Exhibits A, B, C, etc., be sent up. On looking to the documents sent up, we find none of them identified by the trial judge. True they are referred to in the bill of exceptions as Exhibits A, B, C, etc., but none of them appear to have been filed in the court below. So if they could otherwise be treated as a part of the bill of exceptions, with such doubtful identification by the trial judge, still, never having been filed in the court below, they cannot be looked to here. A bill of exceptions must, within the statutory time, be both authenticated and filed, and we cannot consider anything in this court that is not shown to have been a part of the record below. Dunn v. State, 127 Tenn., 267, 154 S. W., 969, and cases cited."

Moreover, we do not think that the documents here in question are sufficiently authenticated by the trial judge as a part of the bill of exceptions in this case. The word "Identified," without more, particularly, without date, is not sufficient to authenticate a document as a part of the bill of exceptions. In the case of Battier v. The State, 114 Tenn., 563, 567-568, 86 S. W., 711, it is said:

"It is not necessary that a bill of exceptions be contained in one document. Parts of it may be in the form of exhibits to be inserted

in the proper places, according to the directions given therein; but all of the bill of exceptions, whether in one or more documents, must be present and examined when it is signed by the judge, and the several papers to be copied must be so marked as exhibits that no mistake in their identity can be made, and it must not be left to the clerk or other person to determine what constitutes any part of the record. The enforcement of this rule is absolutely necessary in order to secure a certain and accurate record of the proceedings of trial courts, and no relaxation of it can be allowed. When extrinsic matters, which can only be made part of the record by bill of exceptions, appear in the transcript without proper authentication, they cannot be considered by this court, but will be stricken out when called to its attention.''

And in the case of Railway and Light Co. v. Marlin, 117 Tenn., 698, 705, 99 S. W., 367, it is said:

''If the clerk of the court below cannot be permitted to determine what shall constitute any part of the record, and he cannot, as has been expressly held, then neither can counsel, by affidavit or otherwise, be so permitted. The authentication of all matters going to make up and constitute the record must be by the trial judge, and by him in the exercise and discharge of his judicial functions; and no one else can perform that service for him, nor can he delegate it to any one else. Neither the affidavits of counsel, nor papers purporting to be the original of those inserted in the bill of exceptions, can be, or have been, looked to or considered by the court.''

It is settled by repeated decisions of our Supreme Court that the contents of a bill of exceptions cannot be considered for any purpose by appellate court unless it affirmatively appears that it was authenticated by the trial judge and filed with the clerk within the time allowed by law. Jackson v. Bell, 143 Tenn., 452, 455, 226 S. W., 207; Hinton v. Insurance Co., 110 Tenn., 113, 118, 72 S. W., 118; Cronan v. State, 113 Tenn., 539, 542, 82 S. W., 477; Bundren v. State, 109 Tenn., 225, 230, 70 S. W., 368; Wright v. Redd Bros., 106 Tenn., 719, 721, 63 S. W., 1120; Jones v. Moore, 106 Tenn., 188, 190, 61 S. W., 81; Muse v. State, 106 Tenn., 181, 183, 61 S. W., 80.

This rule, of course, applies to the entire bill of exceptions, and, therefore, in order to make exhibits a part of the bill of exceptions it must affirmatively appear that they were authenticated as such by the trial judge and filed by the clerk within the prescribed period.

For the reasons stated, the defendant's assignments of error numbered one to six, inclusive, are overruled.

Passing the seventh assignment of error for the present: Through its eighth, ninth, tenth, eleventh and twelfth assignments the defendant complains of certain specified instructions contained in the charge of the trial court to the jury; but the court's charge to the jury is not in the record brought to this court. It was not made a

part of the bill of exceptions and not copied into the transcript. The bill of exceptions contains no reference to the charge.

The bill of exceptions was signed by the judge and filed by the clerk on April 28, 1927. The time for filing the bill of exceptions expired on April 7, 1927. The transcript of the record, including the bill of exceptions, was filed in this court on June 10, 1927, and thereafter, viz: On July 28, 1927, a document purporting to be the original charge in this case was filed with the clerk of this court by counsel for defendant, with the consent of counsel for plaintiff. At the foot of the charge is written with pen and ink (the charge being typewritten) these words: "This is a correct charge in this charge. (Signed) W. C. Cherry, Special Judge. July 26, 1927."

And on the margin of the last page there is written, with pen and ink, these words: "This charge was handed to me as part of the bill of exceptions and approved as such. This charge should be in the bill of exceptions. (Signed) W. C. Cherry, judge."

We think it clear from the authorities hereinbefore cited that the charge cannot be made a part of the bill of exceptions in the manner here attempted. If the charge had been copied into the transcript, but not made a part of the bill of exceptions, it could not be considered for any purpose in this court. Marble Co. v. Black, 89 Tenn., 118, 122, 14 S. W., 479; Railway Companies v. Foster, 88 Tenn., 671, 673, 13 S. W., 694, and other cases there cited.

The defendant's assignments of error numbered eight to twelve, inclusive, are overruled.

This leaves for disposition only the seventh assignment of error, which is that "the court erred in permitting the counsel for the plaintiff to argue to the jury over the objection of the defendant that the superintendent of the defendant company wrote in claim of death proof that the deceased died with chronic nephritis, without any evidence to support it."

This assignment is based upon matters which appear from recitals in the bills of exceptions, as follows:

"Mr. W. S. Lawrence, attorney for the plaintiff, in arguing said cause to the jury, said:

" 'Gentlemen of the jury, the plaintiff in this cause is a poor, ignorant negro, and the statement in the death proof that the deceased died with chronic nephritis, was filled in said blanks by the superintendent of said Insurance Company.'

"At the time he made the above statement to the jury, the defendant objected and asked the court to exclude it from the jury. The court overruled the objection and request, to which action of the court the defendant excepted."

Manifestly, the person to whom plaintiff's attorney referred to as "superintendent of said Insurance Company" was T. H. Durham, who testified as a witness for defendant. This witness was examined

and cross-examined with reference to the "proofs of death" which had been filed as exhibits to the testimony of plaintiff, and he testified, in substance and effect, that he "did not write the statement in the death proof that the deceased died with chronic nephritis." If there was no evidence which contradicted, or was inconsistent with, the testimony of the witness Durham just stated, it was highly improper for plaintiff's attorney to make the statement to the jury shown by the above-quoted excerpt from the bill of exceptions, and it was the duty of the trial judge to sustain the objection made by defendant's counsel and to properly instruct the jury. Thompson on Trials (2nd Ed.), Vol. 1, pp. 955-958; Davis v. Railway Company (Wis.), 33 L. R. A., 654, 659; Turner v. State, 4 Lea, 206, 209; Pearson v. State, 143 Tenn., 385, 390, 226 S. W., 538.

But, inasmuch as the "proofs of death" to which plaintiff's attorney referred in argument as aforesaid are not a part of the record to which we can look, we are not in a position to say that they did not furnish some evidence of the truth of the statement of plaintiff's attorney to which defendant's attorney objected, and that, for that reason, the trial judge "overruled the objection." "The presumption is in favor of the correctness of the rulings and decisions of lower courts, and under the established practice in this court, unless error is affirmatively shown, an affirmance will be had." Denton v. Woods, 86 Tenn., 37, 40, 5 S. W., 489; Acc. Nolen v. Wilson, 4 Sneed, 332, 340.

"If the bill of exceptions contains the statement that it embraces all the evidence and there be nothing to indicate otherwise, the verdict must be tested by what is found therein. But notwithstanding the statement that it contains all the evidence, as does the bill of exceptions here, if it is apparent that this statement is untrue, the rules of practice require an affirmance." Railroad Co. v. Crohm, 4 Hig., 317, 319; Acc. Pharris v. Commercial Credit Company, Mss. opinion of Court of Appeals at Nashville, by Judge DeWitt, October 23, 1926.

Moreover, in matters of the kind involved in defendant's seventh assignment of error, a very large discretion is vested in the judge presiding at the trial. "It has been held that it is within the limits of this discretion for the judge to determine whether he will stop counsel at the time, or wait and correct the error in his charge to the jury." Thompson on Trials (2nd Ed.), sec. 958, p. 802. If it was within the discretion of the trial judge to wait until his general charge was given to the jury and at that time instruct the jury with reference to any improper statements made by counsel in argument, the appellate court will presume, in the absence of the charge from the record, that the trial court performed its duty in that respect. Denton v. Woods, supra. The seventh assignment of error is overruled.

It results that the assignments of error are all overruled and the judgment of the circuit court is affirmed. Judgment will accordingly be entered here in favor of the defendant in error Nannie Woodward and against the plaintiff in error Cosmopolitan Life Insurance Company and the surety on its appeal bond for $320, with interest thereon from the date of the judgment below (April 4, 1927), and the costs of the cause, including the cost of the appeal.

Crownover and DeWitt, JJ., concur.

## ON PETITION FOR REHEARING.

On a former day of the present term the judgment of the circuit court in favor of Nannie Woodward and against the Cosmopolitan Life Insurance Company, for $320, with interest, was affirmed.

In our former opinion (filed January 28, 1928), we held that, on the record before us, defendant is not in a position to rely upon any of its assignments of error, for the reason that the written instruments and documents upon which its defenses were based in the trial court were not filed in the trial court and have not been made a part of the record on appeal, and for the further reason that the charge of the court to the jury (to which four of the assignments of error are directed) was not preserved as a part of the record.

The defendant has filed a petition for a rehearing in which it is respectfully but earnestly insisted that this court erred in excluding from its consideration the aforementioned written instruments and documents and the charge of the trial court to the jury.

Petitioner also calls attention to the fact that our former opinion contains recitals as follows: "The bill of exceptions was signed by the judge and filed by the clerk on April 28, 1927. The time for filing the bill of exceptions expired on April 7, 1927."

The last-mentioned date in the above quotation (April 7, 1927) is a clerical or typographical error. The motion for a new trial was overruled and the appeal in error was granted on April 16, 1927. At that time the defendant was allowed fourteen days from that date in which to prepare and file its bill of exceptions; so that, the time for filing the bill of exceptions expired on April 30, 1927, and we intended to so state in the written opinion. However, it is apparent from a reading of the opinion that the aforesaid date of "April 7, 1927" is a clerical error, for the reason that we treated the bill of exceptions as filed in time, which would not have been true if the time for filing it had expired on April 7, 1927. This error, therefore, did not affect the result.

With reference to the charge of the trial court to the jury: Petitioner calls attention to a consent order entered July 28, 1927 (erroneously stated in the petition as June 28, 1927), on the minutes of this court in this case, headed "suggestion of diminution," as follows:

"In this cause, it appears from an inspection of the transcript, that the charge of the court was inadvertently omitted in copying and sending up the transcript; and the charge in its proper form, having been submitted to the trial judge, and the same O Ked, by him as the proper charge given to the jury upon the trial of this cause:

"It is agreed by counsel for plaintiff and defendant, that the charge of the court, as O Ked, and certified to by Honorable W. C. Cherry, the trial judge, on July 26, 1927, may be filed in this case as part of the transcript and treated for all purposes as the same had been copied in the transcript and sent up and filed in this cause without the suggestion of the diminution of the record: And it is so ordered by the court that such charge be filed by the clerk in this cause."

The foregoing consent order could not operate to make the charge of the court a part of the record to which this court can look, unless the charge had been made a part of the bill of exceptions by seasonable action of the trial judge in the manner prescribed by law. When the suggestion of a diminution of the record is made, in advance of the hearing, by counsel at the bar, with the statement that a part of the record has been "inadvertently omitted" from the transcript, and counsel for both parties agree that a transcript of such omitted parts may be filed and treated as if on suggestion of diminution of the record, it is the usual practice of the court to permit an order to be entered accordingly, upon the statements of counsel; but if, on the hearing, or the subsequent examination of the record by the court before final disposition of the cause, it appears that the matters thus filed were not in fact preserved as a part of the record in any lawful manner, such order is, and must be, treated as entered by inadvertence and disregarded. As held in cases cited in our former opinion, merely filing a charge in the appellate court, even though it be copied into the transcript, does not make it a part of the record to which the appellate court can look, unless it is seasonably authenticated as a part of the bill of exceptions.

With reference to the "written instruments and documents" before mentioned: We said (among other things) in our former opinion, that "a detached envelope accompanies the transcript, in which envelope we find a number of documents" etc.; and again we said that "certain unattached documents, not marked filed, and bearing the same indefinite and undated identification as those heretofore described, are among the papers found in the aforementioned envelope. (The connection in which these statements are made may be seen from our former opinion on file in the cause).

It is said in the petition (referring to our former opinion) that "the court says that the envelope in which the exhibits were con-

tained, was detached from the transcript," and that "when the transcript left the possession of counsel for defendant in this court, said envelope, with the exhibits contained therein, was attached inside of the back of said transcript by paper brads."

Counsel seemingly misunderstood the meaning which the court intended to convey by referring to the envelope and the "exhibits" as "detached" and "unattached." When the transcript reached the hands of the members of the court, after the hearing at the bar, the envelope containing the documents mentioned was fastened to the inside of the back of the transcript in the manner described in the petition. We referred to the envelope as "detached" and to the documents as "unattached" merely as descriptive of the fact that they were not included in that part of the bound transcript to which the usual certificate of the clerk was appended, and we did not mean to say (and did not hold) that, for that reason, they did not constitute a part of the record here.

If it affirmatively appears that documents which accompany the transcript were filed in the court below and were properly and seasonably authenticated by the trial judge as a part of the bill of exceptions, they will be treated as a part of the record on appeal, whether physically attached to the transcript or not.

In support of its petition for a rehearing, petitioner presents an affidavit of Judge Cherry, who presided at the trial in the circuit court, and an affidavit of W. H. Lingner, clerk.

The affidavit of Judge Cherry is as follows:

"I, W. C. Cherry, make oath as follows:

"That I acted as Special Judge in the place of Hon. E. F. Langford, in the Third Circuit Court, in April, 1927, and as Special Judge of that court I tried the case of Nannie Woodward v. Cosmopolitan Life Insurance Company now on appeal in the Court of Civil Appeals.

"The charge attached to the bill of exceptions in the case was true and correct charge given by me to the jury in that case. Said charge was submitted to me on or before April 28, 1927, and after making certain corrections in ink shown in the face of the charge, was approved by me at that time.

"The fourteen exhibits attached to the bill of exceptions and marked 'identified, W. C. Cherry, Judge,' were in fact presented to me on or before April 28, 1927, and were at that time so marked and signed by me.

"The said charge and exhibits were presented to me for my approval, identification and signature at the same time the other parts of the bill of exceptions were presented to me, and same were approved by me at that time."

The affidavit of Mr. Lingner, the clerk, is as follows:

"I, W. H. Lingner, make oath as follows:

"That I am now and was clerk of the Third Circuit Court of Davidson county, Tennessee, all during April, 1927.

"That on April 28, 1927, the bill of exceptions in the case of Nannie Woodward v. Cosmopolitan Life Insurance Company now on appeal in the Court of Civil Appeals, were delivered to me for the purpose of filing same, and the same was marked filed by me on said date. With the bill of exceptions there was also delivered to me for the purpose of filing fourteen exhibits, thirteen of which had previously been 'identified, W. C. Cherry, Judge,' and one had been so identified. Said exhibits as stated were delivered to me for the purpose of filing at the time the bill of exceptions was delivered. By oversight or inadvertence, the exhibits were not marked filed by me at the time. However, said exhibits were delivered to me at said time and remained in my possession from that time until same were filed in the Court of Appeals, with the transcript of said case.

"Said exhibits were inclosed in an envelope at the time they were delivered to me and at that time I marked on said envelope the following:

"'The within exhibits are in the case of Nannie Woodard v. Cosmopolitan Life Insurance Co. ordered sent up in their original form.

"'W. H. Lingner.'

"The said exhibits remained in said envelope while the transcript was being prepared, and as stated the exhibits were ordered in the bill of exceptions to be sent up in their original form. I attached said envelope containing said exhibits to the inside of the front of the transcript in this case with rubber bands, and delivered them to the clerk of the Court of Appeals attached in that manner.

"As a fact said exhibits were filed with me on April 28, 1927, which was before the expiration of the time within which they should have been filed under the orders of the court."

If these affidavits are permitted to serve the purpose sought by petitioner, it is obvious that the effect will be to amend the bill of exceptions, and supply an omission in the authentication and certification thereof, by means of statements of the judge and clerk of the trial court after the adjournment of the trial term and after the time allowed for preparing and filing the bill of exceptions had expired. A bill of exceptions cannot be amended in this manner. Steele v. Davis, 5 Heisk., 75; Kennedy v. Kennedy, 16 Lea, 736, 737; Jones v. Burch, 3 Head, 602, 605.

In Steele v. Davis, supra, the Supreme Court said:

"It has been repeatedly held by this court, 'A bill of exceptions to become a part of the record must be made up and signed by the judge at the term in which the trial is had.'

"This means that, if the bill of exceptions is incomplete in any particular, it is not in the power of the court to change it —that as it is signed by the court, so it must remain and continue, unless corrected or changed during the term at which the trial was had.

"The object of the rule is to avoid the evil consequences of mistakes, or forgetfulness of testimony, that would necessarily come about in the time intervening between term and term.

"The term 'bill of exceptions,' as used in the reports, means an entire thing, a record of the evidence and ruling of the court in the cause, and it is as such that it must be made up and signed at the term of trial.

"To have the rule to mean less or more is to make it mean nothing. If it can be added to for one purpose, it can be for all purposes. If it (the bill of exceptions) may be amended in one particular, it may be in every. And so the entire bill of exceptions could be, and often would be, changed throughout.

"To add to or take from it, after it is signed, and after the adjournment of the court, is in violation of the rule. Such additions or diminution cannot be regarded as part of the bill of exceptions."

Recitals made by clerks in transcripts, outside of the certificates they are required by law to make, will be disregarded. Bass v. State, 6 Baxt., 579, 583; Hardwick v. State, 6 Lea, 229, 230; Bundren v. State, 109 Tenn., 225, 70 S. W., 368.

In the case of Shelby County v. Bickford, 102 Tenn., 395, 406 (52 S. W., 772), the court said:

"After the appeal was effected in this cause and transcript filed here, diminution of record was suggested here, and several affidavits filed seeking to show that the deed referred to and the record in the cause of Anderson v. Partee were both read on hearing below, and the deed was thereupon sent up and filed with the balance of the record. This, however, does not make these papers a part of the record. Even the trial judge cannot, after appeal, amend and insert in the bill of exceptions omitted recitals, though parties agree to its being done. Kinnedy v. Kinnedy, 16 Lea, 736. The effort here is, by affidavits filed in this court, to supply the bill of exceptions and incorporate into the record here evidence which was never made a part of the record in the court below. This practice is vicious in itself, contrary to established rules, and would lead to harmful results in the future."

In addition to the cases cited in our former opinion and those heretofore cited in this opinion, other cases applying the rules stated in the above quoted excerpts from Steele v. Davis, and Shelby County v. Bickford, may be cited, as follows: Heald v. Wallace, 109 Tenn., 346, 256, 71 S. W., 80; State v. Hawkins, 91 Tenn., 140, 146, 18 S. W., 114; Ballard v. Railroad, 94 Tenn., 205, 208, 28 S. W., 1088; Dunn v. State, 127 Tenn., 267, 274, 154 S. W., 969; Rhinehart v. State, 122 Tenn., 698, 127 S. W., 445; Wynne v. Edwards, 7 Humph., 418; Hill v. Bowers, 4 Heisk., 272; Owens v. State, 16 Lea, 1, 3; Huddleston v. State, 7 Baxt., 55; Staggs v. State, 3 Humph., 372, 375.

After a re-examination of the authorities, we are satisfied that the conclusion stated in our former opinion is in accord with the rules announced and applied by our Supreme Court in the numerous cases we have cited in this and our former opinion; and it is our duty to follow the law as declared by the court of last resort. An order will accordingly be entered denying and dismissing the petition for a rehearing, at the cost of the petitioner Cosmopolitan Life Insurance Company.

Crownover and DeWitt, JJ., concur.